IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SAMUEL SAN MIGUEL, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 5:20-CV-041-BQ |
| v. § | |
| § | |
| JOHN COCHRAN, *et al.*, § | |
| § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant John Cochran's "Motion to Dismiss." ECF No. 5. For the reasons stated herein, the undersigned United States Magistrate Judge recommends that the United States District Court **GRANT** Defendant Cochran's Motion to Dismiss.

### I. Procedural History

Plaintiff San Miguel initially filed this action in state court alleging violations of his constitutional rights by Defendants Texas Tech University Health Sciences Center (Texas Tech), Marsha McLane, Michael Searcy, Racheal Kingston, Chris Salinas, John Cochran, Cynthia Jumper, Taylor Caldwell, Joanne Castro, Cortney Bearden, and Debra Keesee. Compl. 13–15, ECF No. 1-3.[1] Defendant John Cochran removed this case, with the consent of Defendants McLane, Searcy, Kingston, Salinas, Castro, and Keesee, from the 154th Judicial District Court of Lamb County, Texas, to this Court on February 21, 2020.[2] ECF No. 1, at 2–3. On February 28, 2020, Defendant Cochran filed his Motion to Dismiss. ECF No. 5.

---

[1] Page citations to San Miguel's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

[2] The removal was procedurally defective because Defendant Caldwell, who had been properly served at the time of removal, did not consent. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the

1

## II. Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility").

A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

---

action."). That defect is of no consequence, however, because San Miguel did not file a motion to remand within thirty days of the Notice of Removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see also Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 554 (S.D. Tex. 2015) (citing 28 U.S.C. § 1447(c)).

2

### III. Background

#### A. San Miguel's Claims

San Miguel indicates that he is asserting nine legal claims in his Complaint, and seeks relief from Defendant Cochran as to four of them.[3] *See* Compl. 30. San Miguel seeks both monetary damages and injunctive relief. *Id.* at 29–30.

San Miguel is a civilly committed sexually violent predator housed at the Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), in Littlefield, Texas. *Id.* at 13, 16. He has been housed in TCCC since September 2015. *Id.* at 16. The TCCC is operated by the Texas Civil Commitment Office (TCCO). *Id.* Per San Miguel's Complaint, Defendant Cochran "is the Management Training Corporation (MTC) Regnal [sic] Director over Regent [sic] 3, as well as the TCCC Facility Administrator" (*id.* at 14), and San Miguel asserts that he "is legally responsible for the constitutional standard of medical care provided through contracted TTU services, to the TCCC patients as well as ensuring that San Miguel receives the medical/psychiatric/dental care he needs and is entitled to." *Id.* at 17. San Miguel states that he is suing Defendant Cochran in his individual and official capacities. *Id.* at 14.

San Miguel's first two claims allege that "[t]he defendants do not provide enough nourishment for Plaintiff at the TCCC, he is left with hunger pains during the day and [when] goes to sleep at night," and that TCCC denies him access to care packages from his family because he has not taken a polygraph examination. *Id.* at 17–19. Specifically, San Miguel asserts that "TCCC has a custom of denying the TCCC patients and San Miguel an adequate diet." *Id.* at 18. San

---

[3] Many of San Miguel's claims allege that "Defendants As a Whole" violated his rights (Compl. 26–28), but he seeks relief from Defendant Cochran as to only four of the nine claims. *Id.* at 30. As such, the undersigned examines only those four claims in regard to Cochran. Even if Cochran is considered a nominal Defendant as to all nine claims, dismissal would still be appropriate on the basis that San Miguel has not asserted any factual allegations specifically identifying wrongdoing by Cochran with respect to the other five claims. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Miguel claims that he began experiencing "extreme weight loss" in 2016, leading to a medical order for extra calories in the form of a "4oz calorie health shake with meals." *Id.* San Miguel states that this order remained in effect for two-and-a-half years, but that on March 1, 2019, TCCC discontinued his shakes "without consulting him or even checking his weight." *Id.* San Miguel claims "[t]his was the result of a TCCC facility wide sweep, that discontinued every patients [sic] calorie shake on [sic] the facility, TCCC did this to cut spending." *Id.* San Miguel alleges that, from May 1 to August 16, 2019, his weight dropped from 162 pounds to 150 pounds and claims "that defendants are starving him, his family is worried about him, and he is in fear for his physical safety." *Id.* In connection with this weight loss, San Miguel asserts that he "has begged defendants Searcy, Kingston, and Salinas, to allow him to receive a package of food from his family yet they have refused him this for over a [sic] 1 year and 8 months." *Id.* He then avers that "Searcy has laughed at plaintiff multiple times, when he has personally denied San Miguel's request to have a care package." *Id.* at 18–19. According to San Miguel, the basis for denying him care packages is that "he has not taken a polygraph exam." *Id.* at 19.

The third claim is premised on allegations that San Miguel chipped a tooth in September 2015 and a dentist stated that San Miguel risks losing the tooth if it is not repaired with a filling.[4] *Id.* He asserts that Defendants McLane and Searcy have denied him such treatment, and that Searcy has specifically told him that TCCC is "not gonna pay to fix it." *Id.* San Miguel further claims that "Defendants also deny San Miguel teeth cleanings, or any type of dental checkups of any kind." *Id.* San Miguel then compares his dental care while housed at TCCC to that provided while he was an inmate in the Texas Department of Criminal Justice (TDCJ), averring that his treatment at TCCC is "worse" than his treatment in TDCJ. *Id.* Finally, San Miguel states,

---

[4] San Miguel does not specify when the dentist made this determination.

4

"Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC." *Id.*

With respect to the fourth claim, San Miguel alleges that "Defendants expect San Miguel to pay for his own dental care, yet he is completely deprived of his liberty and forced to remain indigent at the TCCC as he cannot seek gainful employment." *Id.* at 20. San Miguel then references a grievance response attached to his Complaint, answered by "A. Maldonado," stating that "Texas Tech does not provide Dental Care. Submit a Communication to Captain Pierce, stating where and what you need specifically done. MTC will schedule Self Pay appointments. Texas Tech provides Emergency dental care only." *Id.*; ECF No. 1-3, at 64.

### B. Defendant Cochran's Motion to Dismiss

Defendant Cochran filed his Motion to Dismiss under Rule 12(b)(6) on February 28, 2020, alleging two grounds for dismissing San Miguel's claims. ECF No. 5. Defendant Cochran first argues that San Miguel's claim, premised on inadequate medical or dental care, does not adequately allege deliberate indifference on Cochran's part. *Id.* at 3–4. Defendant Cochran next asserts that San Miguel's "Complaint is devoid of any allegations of Defendant's specific conduct," and "alleges no facts showing Defendant had any role in the provision of dental, mental health, or medical care, or in ordering certain diets and/or medication." *Id.* at 4. Further, insofar as San Miguel alleges Defendant Cochran is liable based on his role as Facility Administrator at TCCC, Defendant Cochran argues that San Miguel has not adequately alleged facts supporting supervisory liability because he does not allege that Cochran implemented any policy leading to violations of San Miguel's rights. *Id.* at 5.

### C. San Miguel's Response

San Miguel filed his response to Defendant Cochran's motion on March 27, 2020,[5] arguing that he has sufficiently alleged Defendant Cochran's personal involvement in these events and that Cochran is liable as a supervisory official because he "implement[ed] unconstitutional policies that causally result[ed] in [San Miguel's] injur[ies]." ECF No. 11, at 4 (quoting *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (internal emphasis omitted)). He notes that he alleged "TCCC has a custom of denying the TCCC patients and San Miguel an adequate diet" (*id.* (quoting Compl. 18 (internal emphasis omitted)) and that his Complaint "describes the Defendant's expressed policy of the denial of Dental Care, and includes copies of answered TCCC/MTC grievances (answered by TTU medical staff) stating the same." *Id.* at 5 (citing Compl. 20). In support of his position, San Miguel conclusorily asserts that "[t]he Facility Administrator of a clinical treatment facility . . . [is] responsible for the Policy, function, management, and provision of medical care the Patients at [TCCC] are subjected to." *Id.* at 6. San Miguel then dedicates a significant portion of his response to arguing that the Court should apply the professional judgment standard announced in *Youngberg v. Romeo*, 457 U.S. 307 (1982), rather than the Eighth Amendment deliberate indifference standard, to his claims concerning the adequacy of medical care.[6] ECF No. 11, at 6–13.

### IV. Discussion

The District Court should dismiss San Miguel's claims against Defendant Cochran because he has neither alleged Defendant Cochran was personally involved in any act that allegedly

---

[5] San Miguel's filing responded to two separate motions to dismiss, one filed by Defendant Cochran and the other by Defendant Caldwell. Some arguments presented in San Miguel's response are inapplicable to Defendant Cochran's motion.

[6] The Court need not resolve this issue to properly analyze Defendant Cochran's motion. San Miguel's claims should be dismissed for failing to allege personal involvement by Cochran and for being too vague to state a claim with respect to any allegation that he implemented an unconstitutional policy.

6

violated San Miguel's rights nor that he implemented any policy that caused the alleged violations. San Miguel's claims against Defendant Cochran are principally based on his role as a supervisory official at TCCC. *See* ECF No. 11, at 4–6 (arguing that he has alleged personal involvement, e.g., by pointing to allegations of policies and citing Fifth Circuit precedent concerning supervisory liability).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson*, 709 F.2d at 382. A supervisory official is not liable for the acts of his subordinates unless: (1) he affirmatively participated in an act that caused a constitutional deprivation, or (2) he implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille*, 977 F.2d at 929 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. Further, vague and non-specific allegations of wrongdoing are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019); *see also Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant . . . . To prevail against a supervisory

official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force in causing the plaintiff's harm.").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

Here, San Miguel's claims are premised on nothing more than bare assertions of responsibility based on Defendant Cochran's status as Facility Administrator; he seeks to impose liability on Defendant Cochran simply because of the position he holds, not because of anything he purportedly did. As to claims one and two, which concern San Miguel's diet and access to care packages, he alleges *no facts* that tie Defendant Cochran to the denial of calorie shakes or access to care packages. *See* Compl. 17–19. Regarding the denial of calorie shakes, San Miguel merely makes generic references to "Defendants" and alleges that "TCCC has a custom of denying" patients an adequate diet and "TCCC . . . denied" him his shakes. *Id.* at 17–18. With respect to the care packages, San Miguel specifically claims that Defendants "Searcy, Kingston, and Salinas" have denied him access to the packages, but makes no mention of Defendant Cochran, and later refers to "Defendants TCCO" denying him the care packages. *Id.* at 18–19.

Claims three and four at least mention Cochran's name among various officials—specifically, Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro—who San Miguel vaguely alleges "denied Plaintiff . . . dental care for the entire time they have been employed or contracted with the TCCC." *Id.* at 19. Yet, his allegations go no further and do not

specify the manner in which Defendant Cochran allegedly denied him access to dental care. *Id.* As to the policy itself, San Miguel refers again to generic "Defendants" who "expect [him] to pay for his own dental care" and "asserts that TCCO misappropriates their funds, and pockets the money that is supposed to provide for his care." *Id.* at 20.

San Miguel falls short of properly alleging Defendant Cochran was personally involved in any constitutional violation. Here, the only aspect of San Miguel's allegations that pertain to Defendant Cochran's alleged conduct is that he, along with five other Defendants, "denied" San Miguel access to dental care. *Id.* at 19. San Miguel does not explain how Defendant Cochran denied the dental care San Miguel claims that he needs. With respect to claims one and two, Cochran is not even mentioned as an actor associated with the events; San Miguel names only Defendants Searcy, Kingston, and Salinas in connection with his diet concerns and care package denials. *Id.* at 18. As to claims three and four pertaining to dental care, the only person San Miguel names as having taken any specified action regarding these denials is Defendant Searcy, who allegedly told San Miguel that TCCC would not pay to fix his teeth. *Id.* at 19. Other than his conclusory statement that Defendant Cochran "denied" him access to dental care, San Miguel sets forth no factual allegations that, if true, would "allow[] the court to draw the reasonable inference" (*Iqbal*, 556 U.S. at 678) that he was personally involved in the alleged denial of dental care.

Insofar as San Miguel asserts Defendant Cochran "implemented an unconstitutional policy" (ECF No. 11, at 4), his claim fails for similar reasons. At no point in his Complaint does San Miguel allege that Defendant Cochran implemented any policy, let alone that he implemented a policy related to calorie shakes, patient diets, access to care packages, or dental care. San Miguel merely asserts that Cochran "is the Management Training Corporation (MTC) Regnal [sic] Director over Regent [sic] 3, as well as the TCCC Facility Administrator" (Compl. 14), and that

he "is legally responsible for the constitutional standard of medical care provided through contracted TTU services, to the TCCC patients as well as ensuring that San Miguel receives the medical/psychiatric/dental care he needs and is entitled to." *Id.* at 17. In his response to the Motion to Dismiss, San Miguel conclusorily states: "The Facility Administrator of a clinical treatment facility . . . [is] responsible for the Policy, function, management, and provision of medical care the Patients at the facility are subjected to." ECF No. 11, at 6. Even if the Court were to accept this statement as true and incorporate it into San Miguel's Complaint, it would not cure the fundamental defect requiring dismissal of San Miguel's claim: He has not alleged with any degree of specificity that Defendant Cochran implemented the policies that he claims are the source of the alleged constitutional violations.

There are no factual allegations in San Miguel's Complaint that, if taken as true, would support a claim against Defendant Cochran. San Miguel has simply named every person with a title that he thinks *might* have some policymaking role, Defendant Cochran among them, and claims that they should be held liable. *See, e.g.*, Compl. 19 (alleging that "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC").[7] His claims are supported by nothing more than naked, conclusory assertions of responsibility without any factual support. Such vague and conclusory statements do not warrant a presumption of truth nor do they state a claim. *See Iqbal*, 556 U.S. at 679 ("[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a

---

[7] Per San Miguel's Complaint, Defendant Kingston is the "TCCO/TCCC Unit Manager," Defendant Salinas is "San Miguel's TCCO Case Manager," Defendant Cochran is "MTC regent [sic] 3 Director/TCCC Facility Administrator," Defendant Jumper is Texas Tech's "Vice President-Health Policy & Special Health Initiatives Managed Care," Defendant Caldwell is a "TCCC Project Manager," and Defendant Castro is a "TCCC Primary Care Provider." *Id.* at 17. With respect to each Defendant, San Miguel asserts that they are "legally responsible for the constitutional standard of medical care" he receives, or some variation thereof. *Id.*

complaint, they must be supported by factual allegations."). As such, the District Court should dismiss San Miguel's claims that Defendant Cochran violated his constitutional rights with respect to his diet, access to care packages, or dental care. *See Rivera v. Salazar*, 166 F. App'x 704, 705 (5th Cir. 2005) (affirming dismissal of supervisory liability claims premised only on conclusory allegations that defendant created a policy leading to unconstitutional practices); *Reagan v. Burns*, Civil Action No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *16 (N.D. Tex. Oct. 30, 2019) (recommending dismissal of prisoner's diet-based claims as conclusory and therefore insufficient to state a claim), *R. & R. adopted by* 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019); *Wade v. Travis Middle Sch.*, No. 3:11-CV-0276-G (BK), 2011 WL 3880481, at *4 (N.D. Tex. Aug. 9, 2011) (recommending dismissal of § 1983 claims alleging discrimination because they were vague and conclusory), *R. & R. adopted by* 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011).

## V.  Conclusion

For these reasons, the undersigned recommends that the United States District Court **GRANT** Defendant John Cochran's "Motion to Dismiss" (ECF No. 5) and **DISMISS WITH PREJUDICE** Plaintiff Samuel San Miguel's claims against Defendant Cochran.

## VI.  Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 11, 2020.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE