IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SAMUEL SAN MIGUEL, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 5:20-CV-041-BQ |
| v. § | |
| § | |
| JOHN COCHRAN, *et al.*, § | |
| § | |
| Defendants. § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Taylor Caldwell's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)." ECF No. 6. For the reasons stated herein, the undersigned United States Magistrate Judge recommends that the United States District Court **GRANT** Defendant Caldwell's Motion to Dismiss.

**I.     Procedural History**

Plaintiff San Miguel initially filed this action in state court alleging violations of his constitutional rights by Defendants Texas Tech University Health Sciences Center (Texas Tech), Marsha McLane, Michael Searcy, Racheal Kingston, Chris Salinas, John Cochran, Cynthia Jumper, Taylor Caldwell, Joanne Castro, Cortney Bearden, and Debra Keesee. Compl. 13–15, ECF No. 1-3.[1] Defendant John Cochran removed this case under 28 U.S.C. §§ 1331 and 1441(a) (civil action over which a federal district court would have original jurisdiction, i.e., federal question jurisdiction) from the 154th Judicial District Court of Lamb County, Texas, to this Court on February 21, 2020, with the consent of Defendants McLane, Searcy, Kingston, Salinas, Castro,

---

[1] Page citations to San Miguel's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

1

and Keesee.[2] ECF No. 1, at 2–3. On March 2, 2020, Defendant Caldwell filed her Motion to Dismiss. ECF No. 6. One day later, San Miguel filed a motion seeking entry of default judgment against Defendants Caldwell and Texas Tech.[3] ECF No. 7. On March 27, 2020, San Miguel filed a response to Caldwell's Motion to Dismiss. ECF No. 11.

## II. Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility").

---

[2] The removal was procedurally defective because Defendant Caldwell, who had been properly served at the time of removal, did not consent. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). That defect is of no consequence, however, because San Miguel did not file a motion to remand within thirty days of the Notice of Removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see also Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 554 (S.D. Tex. 2015) (citing 28 U.S.C. § 1447(c)).

[3] Of even date herewith, the undersigned has submitted a Report and Recommendation to the United States District Judge recommending denial of San Miguel's "Motion (Request) for Entry of Default Judgment" as to Defendants Caldwell and Texas Tech, as well as dismissal of San Miguel's claims against Texas Tech.

A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

### III. Background

#### A. San Miguel's Claims

San Miguel indicates that he is asserting nine legal claims in his Complaint—Defendant Caldwell is nominally named as a Defendant in each of them. Compl. 26–28, 30. San Miguel seeks both monetary damages and injunctive relief. *Id.* at 29–30. The undersigned will first outline the broad claims San Miguel raises and then examine the allegations as they pertain specifically to Defendant Caldwell.[4]

San Miguel is a civilly committed sexually violent predator housed at the Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), in Littlefield, Texas. *Id.* at 13, 16. He has been housed in TCCC since September 2015. *Id.* at 16. The TCCC is operated by the Texas Civil Commitment Office (TCCO). *Id.* Per San Miguel's Complaint, Defendant Caldwell is a Project Manager for either Texas Tech or TCCC[5] and is "responsible for the constitutional standard of medical care provided to the TCCC patients, as well as ensuring that

---

[4] San Miguel's response demonstrates that his claims against Defendant Caldwell are primarily, if not exclusively, associated with his allegations of inadequate dental care. *See* ECF No. 11, at 4–6. Further, Defendant Caldwell is only specifically named in those allegations pertaining to San Miguel's dental care. Compl. 19.

[5] In his Complaint, San Miguel first names Taylor Caldwell as a Defendant and describes her as the "TTU, Project Manager" (*Id.* at 14) and then later claims that she is the "TCCC Project Manager." *Id.* at 17. In Defendant Caldwell's Motion to Dismiss, she states that she is "currently employed by Texas Tech University Health Sciences Center," but does not specify her role. ECF No. 6, at 2.

plaintiff receives the medical/psychiatric/dental care he needs and is entitled to." *Id.* at 14, 17. San Miguel states that he is suing Defendant Caldwell in her individual and official capacities. *Id.* at 14.

San Miguel's first and second claims allege that he has been denied an adequate diet during his time at TCCC and that he has been denied care packages from his family for twenty months. *Id.* at 17–19. He asserts that he lost twelve pounds between May and August 2019 and further argues that the denial of care packages violates his rights because the denial is a form of punishment for refusing to take a polygraph exam. *Id.* at 18–19.

The third and fourth claims in San Miguel's Complaint relate to dental care, as San Miguel avers that he had a chipped tooth upon entering TCCC in September 2015 and has been denied a cap or filling for the tooth since his arrival. *Id.* at 19. According to San Miguel, he has seen a dentist twice since 2015, and the dentist told him the tooth needs to be repaired or it will lead to permanent damage and eventual loss of the tooth. *Id.* San Miguel further asserts, however, that TCCC refuses to pay for his dental care, instead requiring that San Miguel pay for his dental work. *Id.* at 19–20.

Claims five through nine relate to his psychiatric medical care and medications, which he alleges he has not received for various reasons. *Id.* at 20–26. Specifically, San Miguel alleges that in September 2019, when Texas Tech took control of mental health care at TCCC, TCCC's policies changed and he no longer received adequate psychiatric care. *Id.* at 20–21. San Miguel avers that in November 2019, Defendants Keesee and Bearden "suddenly stopped providing him his antipsychotic psychiatric medication Seroquel, which he had been taking for 2 [and a half] years," causing him to experience withdrawal symptoms until the medication resumed a week later. *Id.* at 21. San Miguel further asserts Defendant Keesee thereafter denied him his Wellbutrin

medication. *Id.* at 21–23. According to San Miguel, Defendants Keesee and Bearden stopped his medications because blood tests showed the medications either were not present in his blood or existed at very low levels, which he claims was a fabrication. *Id.* at 21–22. San Miguel claims that Defendants regularly ignored his requests for medical attention in November 2019. *Id.* at 22–24. San Miguel avers that for fifteen days, he "was left to endure the withdrawal effects that the Warning Label of the Medication warns about." *Id.* at 25. San Miguel states that TCCC officials later provided him with 3mg of melatonin and 50mg of crushed Zoloft from November 26 through December 30, 2019, in an effort to help him sleep, but he claims this was ineffective. *Id.* at 25–26. Finally, San Miguel alleges that on December 30, 2019, Defendant Bearden saw him via a TeleMed consultation but that, after he told Defendant Bearden he filed a grievance against her, she ended the consultation. *Id.* at 26. According to San Miguel's Complaint, Defendants have deprived him of "any antipsychotic, psychotropic, medicine at all, completely denied medical treatment for his serious need[s]." *Id.*

San Miguel's Complaint consists of nineteen pages. *See* ECF No. 1-3, at 13–31. Across those nineteen pages, Defendant Caldwell's name appears only a handful of times. *See id.* at 14–15, 17, 19, 30. San Miguel initially names Caldwell as a Defendant, states her position/title, indicates that she is sued in her individual and official capacities, and provides an address at which she may be served. *Id.* at 14–15. The second mention of Caldwell conclusorily states that she is the "TCCC Project Manager [and] is legally responsible for the constitutional standard of medical care provided to the TCCC patients, as well as ensuring that plaintiff receives the

medical/psychiatric/dental care he needs and is entitled to."[6] *Id.* at 17. The third time Caldwell's name arises is when San Miguel alleges that:

> A TDC prison inmate, may receive 'teeth cleanings' teeth/ cavity fillings, and dental maintenance checkups, yet TCCO/TCCC/MTC/TTU (defendants) deny this dental care to San Miguel. Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC. MTC/TTU have denied [San Miguel] this care [sic] dental care since May 2019.

*Id.* at 19. Finally, Caldwell is specifically named in San Miguel's prayers for relief, albeit again as a nominal Defendant in reference to all nine claims. *Id.*

### B. Defendant Caldwell's Motion to Dismiss

Defendant Caldwell filed her Motion to Dismiss under Rule 12(b)(6) on March 2, 2020, setting forth three arguments in favor of dismissing San Miguel's claims. ECF No. 6. First, Defendant Caldwell notes that San Miguel seeks, among other things, monetary damages against Defendant Caldwell in her official capacity and argues that such claims are barred by both the Eleventh Amendment and § 1983. *Id.* at 3.[7] Second, Defendant Caldwell states that San Miguel's Complaint does not adequately allege deliberate indifference on her part with regard to his dental claims because he only makes conclusory allegations "asserting that Defendant Caldwell violated his Eighth Amendment rights relating to dental care" and that Caldwell and other Defendants "have each denied [San Miguel] dental care . . . since May 2019." *Id.* at 4–5 (quoting ECF No. 1-3, at 19). Defendant Caldwell points out that no specific allegations of wrongdoing are directed to her actions, and that she is simply grouped in with other Defendants. *Id.* at 5. Finally, Defendant Caldwell argues that San Miguel has not stated a claim under the Fourteenth Amendment because

---

[6] San Miguel makes almost identical assertions regarding the duties of Defendants Salinas, Cochran, Jumper, and Castro. *See* Compl. 17.

[7] Defendant Caldwell's motion is not separately paginated. As such, citations to Defendant Caldwell's motion refer to the page numbers assigned by the Court's electronic filing system.

the allegations set forth do not demonstrate conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 5–6 (quoting *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999)).

### C. San Miguel's Response

San Miguel filed his response to Defendant Caldwell's motion March 27, 2020, acknowledging that the Eleventh Amendment and § 1983 bar him from pursuing monetary damages against Defendant Caldwell in her official capacity. ECF No. 11, at 3. He notes, however, that he has also sued Defendant Caldwell in her individual capacity and that he seeks injunctive relief against her in her official capacity. *Id.* Further, San Miguel argues that he has alleged Defendant Caldwell's personal involvement in these events (particularly with regard to his dental care) such that she is liable as a supervisory official because she "implement[ed] unconstitutional policies that causally result[ed] in [his] injur[ies]." *Id.* at 4 (quoting *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (internal emphasis omitted)). San Miguel conclusorily asserts that "the Project Manager of the Medical Dept. [is] responsible for the Policy, function, management, and provision of medical care the Patients at [TCCC] are subjected to." *Id.* at 6. San Miguel dedicates a significant portion of his response to arguing that the Court should apply the professional judgment standard announced in *Youngberg v. Romeo*, 457 U.S. 307 (1982), rather than the Eighth Amendment deliberate indifference standard, to his claims concerning the adequacy of medical care.[8] *Id.* at 6–13. San Miguel also opposes Defendant Caldwell's reference to a standard requiring that an official's actions "shock the conscience" to establish a violation of the Fourteenth Amendment. *Id.* at 13–16.

---

[8] The Court need not resolve this issue to properly analyze Defendant Caldwell's motion. San Miguel's claims should be dismissed for failing to allege personal involvement by Defendant Caldwell and for being too vague to state a claim with respect to any assertion that she implemented an unconstitutional policy.

7

IV. **Discussion**

The undersigned first addresses Defendant Caldwell's asserted official capacity immunity from monetary damages, and then reviews the claims where Caldwell is only nominally named as a Defendant. The Report and Recommendation concludes by examining claims three and four, i.e., the alleged unconstitutional deprivation of dental care.

**A. The District Court should dismiss San Miguel's claims for monetary damages against Defendant Caldwell in her official capacity because she is immune from such claims.**

San Miguel's Complaint states that he seeks $390,000 in monetary damages from Defendant Caldwell—jointly and severally with other named Defendants. ECF No. 1-3, at 29. San Miguel has sued Caldwell in both her individual and official capacities. *Id.* at 17. It is well established that suits against state officials for monetary damages are barred by state sovereign immunity and Eleventh Amendment immunity. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). As such, any claim for monetary damages against Caldwell in her official capacity must be dismissed.

**B. The District Court should dismiss claims one, two, five, six, seven, eight, and nine of San Miguel's Complaint, insofar as they relate to Taylor Caldwell, because San Miguel only nominally names her as a Defendant and alleges no facts supporting a finding of constitutionally impermissible conduct.**

San Miguel's Complaint, in its prayer for relief, seeks monetary damages from Defendant Caldwell with respect to all nine claims alleged. *See* Compl. 30. Thus, San Miguel has presumably named Caldwell as a Defendant to all nine claims. But San Miguel does not allege a single fact with respect to claims one, two, five, six, seven, eight, or nine that connect Defendant Caldwell to the alleged constitutional violations. *See id.* at 17–26. At most, he lumps Defendant Caldwell in

8

with all of the other Defendants, generally accusing them of violating his rights but not specifying what Defendant Caldwell did that violated the Constitution.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Vague and non-specific allegations of wrongdoing are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for stating a § 1983 claim); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019). In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

Here, San Miguel's allegations do not even reach the level of vague and conclusory in relation to Defendant Caldwell; they are practically non-existent with respect to claims one, two, five, six, seven, eight and nine. As such, the District Court should dismiss those claims insofar as Defendant Caldwell is named as a Defendant therein.

### C. The District Court should dismiss claims three and four of San Miguel's Complaint because he does not allege personal involvement or implementation of an unconstitutional policy by Defendant Caldwell.

Claim three is premised on allegations that: (1) San Miguel has a tooth that has been chipped since September 2015; and (2) a dentist has determined it requires a filling to repair or he risks losing the tooth.[9] Compl. 19. He asserts that Defendants McLane and Searcy have denied him such treatment, and that Searcy has specifically told him that TCCC is "not gonna pay to fix it." *Id.* San Miguel further claims that "Defendants also deny San Miguel teeth cleanings, or any type of dental checkups of any kind." *Id.* San Miguel then compares his dental care while housed at TCCC to that provided while he was an inmate in the Texas Department of Criminal Justice (TDCJ), averring that his treatment at TCCC is "worse" than what he received in TDCJ. *Id.* Finally, San Miguel states, "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC." *Id.*

As to claim four, San Miguel alleges that "Defendants expect San Miguel to pay for his own dental care, yet he is completely deprived of his liberty and forced to remain indigent at the TCCC as he cannot seek gainful employment." *Id.* at 20. San Miguel then references a grievance response attached to his Complaint, answered by "A. Maldonado," stating that "Texas Tech does not provide Dental Care. Submit a Communication to Captain Pierce, stating where and what you need specifically done. MTC will schedule Self Pay appointments. Texas Tech provides Emergency dental care only." *Id.*; ECF No. 1-3, at 64.

Caldwell argues in response that San Miguel has not set forth any specific allegations of wrongdoing by Caldwell because he only generally groups Caldwell in with other Defendants who

---

[9] San Miguel does not specify when the dentist made this determination.

10

he vaguely claims have "each denied Plaintiff . . . dental care . . . since May 2019." ECF No. 6, at 4–5 (quoting Compl. 19). San Miguel responds by arguing that TCCC has a policy of denying dental care and that the "Facility Administrator of a clinical treatment facility and the Project Manager of the Medical Dept. are responsible for the Policy, function, management, and provision of medical care the Patients at the facility are subjected to." ECF No. 11, at 5–6. Thus, it appears that San Miguel seeks to hold Defendant Caldwell liable on the theory that she is liable in a supervisory capacity.

A supervisory official is not liable for the acts of her subordinates unless: (1) she affirmatively participated in an act that caused a constitutional deprivation, or (2) she implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille*, 977 F.2d at 929 (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of their subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. As noted above, vague or non-specific allegations of wrongdoing will not suffice to state a claim. *Sias*, 146 F. App'x at 720; *see Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant . . . . To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force in causing the plaintiff's harm.").

San Miguel falls short of sufficiently alleging personal involvement. Here, the only aspect of San Miguel's assertions that pertain to Caldwell's purported actions is that she, along with five other Defendants, "denied" San Miguel access to dental care. Compl. 19. San Miguel does not

11

explain how Defendant Caldwell denied dental care that San Miguel says he needs. In fact, per San Miguel's Complaint, the only person who seems to have explicitly taken action to deny dental care is Defendant Searcy, who allegedly told San Miguel that TCCC would not pay to fix his teeth. *Id.* Other than his conclusory statement that Defendant Caldwell "denied" him access to dental care, San Miguel sets forth no factual allegations that, if true, would "allow[] the court to draw the reasonable inference" (*Iqbal*, 556 U.S. at 678) that Defendant Caldwell was personally involved in the decision to deny him dental care.

Insofar as San Miguel asserts Defendant Caldwell "implemented an unconstitutional policy" (ECF No. 11, at 4), this claim fails for similar reasons. At no point in his Complaint does San Miguel allege that Defendant Caldwell implemented any policy, let alone that she implemented *this* policy related to dental care. San Miguel merely asserts that she is the "TCCC Project Manager [and] is legally responsible for the constitutional standard of medical care provided to the TCCC patients, as well as ensuring that plaintiff receives the medical/psychiatric/dental care he needs and is entitled to."[10] *Id.* at 17. In his response to the Motion to Dismiss, San Miguel conclusorily states: "The Facility Administrator of a clinical treatment facility and the Project Manager of the Medical Dept. are responsible for the Policy, function, management, and provision of medical care the Patients at the facility are subjected to."[11] ECF No. 11, at 6. Even if the Court were to accept this statement as true and incorporate it into San Miguel's Complaint, it would not cure the fundamental defect requiring dismissal of San Miguel's claim: He has not alleged with any degree of specificity that Defendant Caldwell

---

[10] As discussed in a prior footnote, San Miguel is inconsistent in his allegations regarding whether Defendant Caldwell is employed by Texas Tech or TCCC; Defendant Caldwell states that she is employed by Texas Tech but does not state her position, role, or duties. *See supra* n.5.

[11] The "Facility Administrator" to which San Miguel refers is Defendant John Cochran, whose motion San Miguel also responded to with this filing.

implemented the policy that he claims is the source of the alleged constitutional violations. There are *no* factual allegations in San Miguel's Complaint that, if taken as true, would support a claim against Defendant Caldwell. San Miguel has simply named every person with a title that he thinks *might* have some policymaking role, Defendant Caldwell among them, and claims that they should be held liable. *See* Compl. 19 (alleging that "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC").[12] His claims are supported by nothing more than naked, conclusory assertions of responsibility without any factual support. Such vague and conclusory statements do not warrant a presumption of truth nor do they state a claim. *See Iqbal*, 556 U.S. at 679 ("[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). As such, the District Court should dismiss San Miguel's claims that Defendant Caldwell denied him dental treatment or otherwise implemented a policy that led to the denial of dental treatment. *See Reagan v. Burns*, Civil Action No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *16 (N.D. Tex. Oct. 30, 2019) (recommending dismissal of prisoner's diet-based claims as conclusory and therefore insufficient to state a claim), *R. & R. adopted by* 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019); *Wade v. Travis Middle Sch.*, No. 3:11-CV-0276-G (BK), 2011 WL 3880481, at *4 (N.D. Tex. Aug. 9, 2011) (recommending dismissal of § 1983 claims alleging discrimination because they were vague and conclusory), *R. & R. adopted by* 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011).

---

[12] Per San Miguel's Complaint, Defendant Kingston is the "TCCO/TCCC Unit Manager," Defendant Salinas is "San Miguel's TCCO Case Manager," Defendant Cochran is "MTC regent [sic] 3 Director/TCCC Facility Administrator," Defendant Jumper is Texas Tech's "Vice President-Health Policy & Special Health Initiatives Managed Care," Defendant Caldwell is a "TCCC Project Manager," and Defendant Castro is a "TCCC Primary Care Provider." Compl. 17. With respect to each Defendant, San Miguel asserts that they are "legally responsible for the constitutional standard of medical care" he receives, or some variation thereof. *Id.*

## V. Conclusion

For these reasons, the undersigned recommends that the United States District Judge **GRANT** Defendant Taylor Caldwell's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" (ECF No. 6) and **DISMISS WITH PREJUDICE** Plaintiff Samuel San Miguel's claims against Defendant Caldwell.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 11, 2020.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE