IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SAMUEL SAN MIGUEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 5:20-CV-041-BQ |
| v. | § | |
| | § | |
| JOHN COCHRAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Cynthia Jumper's "Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)" and brief in support. ECF Nos. 21, 22. For the reasons stated herein, the undersigned United States Magistrate Judge recommends that the United States District Court **GRANT** Defendant Jumper's Motion to Dismiss.

### I.     Procedural History

Plaintiff Samuel San Miguel initially filed this action in state court alleging violations of his constitutional rights by Defendants Texas Tech University Health Sciences Center (Texas Tech), Marsha McLane, Michael Searcy, Racheal Kingston, Chris Salinas, John Cochran, Cynthia Jumper, Taylor Caldwell, Joanne Castro, Cortney Bearden, and Debra Keesee. Compl. 13–15, ECF No. 1-3.[1] Defendant John Cochran removed this case, with the consent of Defendants McLane, Searcy, Kingston, Salinas, Castro, and Keesee, from the 154th Judicial District Court of

---

[1] Page citations to San Miguel's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Lamb County, Texas, to this Court on February 21, 2020.[2] ECF No. 1, at 2–3. On July 22, 2020, Defendant Jumper filed her Motion to Dismiss. ECF No. 21.

## II. Standard of Review

### A. Rule 12(b)(1), Lack of Subject Matter Jurisdiction

The United States Constitution provides federal courts with original jurisdiction to hear only limited types of cases and controversies. *See* U.S. CONST. art. III, § 2. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider," and that power extends to determining "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). Federal courts "cannot act without authority from Congress or the Constitution." *La. Real Estate Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 394 (5th Cir. 2019) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree.")).

The burden of establishing jurisdiction lies with the party seeking to invoke the federal forum, and a court "must presume" the suit lies outside its limited grant of jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing [the] action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

---

[2] The removal was procedurally defective because Defendant Caldwell, who had been properly served at the time of removal, did not consent to the removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). That defect is of no consequence, however, because San Miguel did not file a motion to remand within thirty days of the Notice of Removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see also Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 554 (S.D. Tex. 2015) (citing 28 U.S.C. § 1447(c)).

In determining whether jurisdiction exists, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). Where a court accepts as true a plaintiff's allegations in evaluating its jurisdiction, and does not consider evidentiary materials outside the pleading, this constitutes a facial review for purposes of determining subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (explaining that under facial, as opposed to factual, analysis, the court accepts as true the complaint's allegations to determine whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction").

### B. 12(b)(6), Failure to State a Claim

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility").

A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

### III. Background

#### A. San Miguel's Claims

San Miguel asserts nine claims in his Complaint, and he nominally seeks relief against Defendant Jumper as to all nine.[3] *See* Compl. 30. San Miguel requests both monetary damages and injunctive relief.[4] *Id.* at 29–30.

San Miguel is a civilly committed sexually violent predator (SVP) housed at the Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), in Littlefield, Texas. *Id.* at 13, 16. He has been housed in the TCCC since September 2015. *Id.* at 16. The TCCC is operated by the Texas Civil Commitment Office (TCCO). *Id.* Per San Miguel's Complaint, Defendant Jumper "is Vice President- Health Policy & Special Health Initiatives- at Texas Tech University Health and Science Center Managed Care . . . who is contracted with the TCCC" (*id.* at 14), and she "is legally responsible for the constitutionally adequate standard of

---

[3] In listing the relief he seeks from various Defendants, San Miguel states that he wants $90,000 in compensatory damages from "Defendants Cochran, Texas Tech University, Jumper, Caldwell, and Castro, jointly and severally, as the relief demanded in the complaint for Claims 1, 2, 3, & 4 . . . ." Compl. 30 (emphasis omitted). San Miguel also requests $300,000 in compensatory damages from "Defendants Texas Tech University, Jumper, Caldwell, Castro, Bearden, and Keesee jointly and severally, as the relief demanded in the complaint for Claims 5, 6, 7, 8, & 9 . . . ." *Id.* (emphasis omitted). In outlining the claims he brings, San Miguel often states that "Defendants As a Whole" violated his rights, but he does not specifically name Defendant Jumper. *Id.* at 26–28.

[4] San Miguel seeks a "PERMANENT INJUNCTION" requiring Defendants to provide all food, medicine, and treatment, both physical and psychological, he alleges Defendants have unconstitutionally denied him. *See* Compl. 29.

medical care provided to the TCCC patients, as well as ensuring that plaintiff receives the medical/psychiatric/dental care he is entitled to." *Id.* at 17. San Miguel states that he is suing Defendant Jumper in her individual and official capacities. *Id.* at 14.

San Miguel's first two claims allege that "[t]he defendants do not provide enough nourishment for Plaintiff at the TCCC, he is left with hunger pains during the day and [when he] goes to sleep at night," and that the TCCC denies him access to care packages from his family because he has not taken a polygraph examination. *Id.* at 17–19. Specifically, San Miguel asserts that the "TCCC has a custom of denying the TCCC patients and San Miguel an adequate diet." *Id.* at 18. San Miguel claims that he began experiencing "extreme weight loss" in 2016, leading to a medical order for extra calories in the form of a "4oz calorie health shake with meals." *Id.* San Miguel states that this order remained in effect for two and a half years, but that on March 1, 2019, the TCCC discontinued his shakes "without consulting him or even checking his weight." *Id.* San Miguel claims "[t]his was the result of a TCCC facility wide sweep, that discontinued every patients [sic] calorie shake on [sic] the facility, TCCC did this to cut spending." *Id.* He alleges that, from May 1 to August 16, 2019, his weight dropped from 162 pounds to 150 pounds and claims "that defendants are starving him, his family is worried about him, and he is in fear for his physical safety." *Id.* In connection with this weight loss, San Miguel asserts that he "has begged defendants Searcy, Kingston, and Salinas, to allow him to receive a package of food from his family yet they have refused him this for over a [sic] 1 year and 8 months." *Id.* He then avers that "Searcy has laughed at plaintiff multiple times, when he has personally denied San Miguel's request to have a care package." *Id.* at 18–19. According to San Miguel, the basis for denying him care packages is that "he has not taken a polygraph exam." *Id.* at 19.

The third claim is premised on allegations that San Miguel chipped a tooth in September 2015, and that a dentist informed him he risks losing the tooth if it is not repaired with a filling.[5] *Id.* He asserts that Defendants McLane and Searcy have denied him such treatment, and that Searcy has specifically told him that the TCCC is "not gonna pay to fix it." *Id.* San Miguel further claims that "Defendants also deny San Miguel teeth cleanings, or any type of dental checkups of any kind." *Id.* San Miguel then compares his dental care while housed at the TCCC to that provided while he was an inmate in the Texas Department of Criminal Justice (TDCJ), averring that his treatment at the TCCC is "worse" than his treatment in TDCJ. *Id.* Finally, San Miguel states, "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC." *Id.*

With respect to the fourth claim, San Miguel alleges that "Defendants expect San Miguel to pay for his own dental care, yet he is completely deprived of his liberty and forced to remain indigent at the TCCC as he cannot seek gainful employment." *Id.* at 20. San Miguel then references a grievance response attached to his Complaint, answered by "A. Maldonado," stating that "Texas Tech does not provide Dental Care. Submit a Communication to Captain Pierce, stating where and what you need specifically done. MTC will schedule Self Pay appointments. Texas Tech provides Emergency dental care only." *Id.*; ECF No. 1-3, at 64.

Claims five through nine of San Miguel's Complaint relate to his psychiatric medical care and medications, which he purportedly has not received for various reasons. Compl. at 20–26. Specifically, San Miguel alleges that in September 2019, when Texas Tech took control of mental health care at the TCCC, its policies changed and he no longer received adequate psychiatric care.

---

[5] San Miguel does not specify when the dentist made this determination.

*Id.* at 20–21. San Miguel avers that in November 2019, Defendants Keesee and Bearden "suddenly stopped providing him his antipsychotic medication Seroquel, which he had been taking for 2 [and a half] years," causing him to experience withdrawal symptoms. *Id.* at 21. San Miguel further asserts Defendant Keesee thereafter denied him his Wellbutrin medication. *Id.* at 21–23. According to San Miguel, Defendants Keesee and Bearden stopped his medications because blood tests showed the medications either were not present in his blood or were at very low levels, which he claims was a fabrication. *Id.* at 21–22. San Miguel claims that Defendants regularly ignored his requests for medical attention in November 2019. *Id.* at 22–24. San Miguel avers that for fifteen days, he "was left to endure the withdrawal effects that the Warning Label of the [medication] warns about." *Id.* at 25. San Miguel states that TCCC officials later provided him with 3mg of melatonin and 50mg of crushed Zoloft from November 26 through December 30, 2019, in an effort to help him sleep, but he claims that this was ineffective. *Id.* at 25–26. According to San Miguel's Complaint, Defendants have deprived him of "any antipsychotic, psychotropic, any medicine at all, completely denied medical treatment for his serious need [sic]." *Id.* at 26. As to claim nine, San Miguel alleges that on December 30, 2019, Defendant Bearden saw him via TeleMed but that she ended the consultation when San Miguel stated he had filed a grievance against her. *Id.* at 26, 28.

### B. Defendant Jumper's Motion to Dismiss

Defendant Jumper filed her Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) on July 22, 2020, identifying multiple grounds for dismissing San Miguel's claims. ECF Nos. 21, 22. First, Defendant Jumper argues that Eleventh Amendment immunity shields her from monetary damage claims asserted against her in an official capacity. ECF No. 22, at 2. Second, Defendant Jumper conclusorily asserts that San Miguel is not entitled to injunctive relief, merely citing broad

principles concerning grants of injunctive relief and stating that "[San Miguel] fails to demonstrate how an injunction would correct a violation of a federal right." *Id.* at 2–3. Defendant Jumper then contends that San Miguel has not properly set forth a claim based on supervisory liability, in that he appears to sue "Defendant Jumper based solely on her role as a high-ranking official with [Texas Tech]." *Id.* at 3–4. Defendant Jumper further argues that San Miguel has not alleged sufficient facts to demonstrate deliberate indifference to serious medical needs. *Id.* at 5–6. Defendant Jumper concludes by arguing that (1) San Miguel has not pleaded adequate facts to state a claim for a violation of his Fourteenth Amendment right to due process, and (2) qualified immunity shields her from San Miguel's claims. *Id.* at 7–9. San Miguel did not file a response to the motion, and it is now ripe for review.

## IV. <u>Discussion</u>

The District Court should dismiss San Miguel's official capacity claims for monetary damages because applicable immunities deprive the Court of subject matter jurisdiction. San Miguel's individual capacity claims against Defendant Jumper are also subject to dismissal because he has alleged neither Defendant Jumper's (1) personal involvement in any act that violated San Miguel's rights nor (2) implementation of a policy that caused the purported violations. Viewed most favorably to San Miguel, his individual capacity claims against Defendant Jumper are principally—if not solely—based on her role as a high-ranking Texas Tech official.

**A. The District Court should dismiss without prejudice San Miguel's claims for monetary damages against Defendant Jumper in her official capacity because she is immune from such claims and the Court lacks subject matter jurisdiction to adjudicate them.**

San Miguel's Complaint seeks $390,000 in monetary damages from Defendant Jumper, jointly and severally with other named Defendants. Compl. 30. San Miguel has sued Jumper in

both her individual and official capacities. *Id.* at 17. It is well established that suits for monetary damages against state officials in their official capacities are barred by state sovereign immunity and Eleventh Amendment immunity. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D. Tex. 2006) (collecting authorities and holding that claim against state official in his official capacity was barred by sovereign and Eleventh Amendment immunities). As such, any claim for monetary damages against Jumper in her official capacity must be dismissed. *See Little v. Tex. Atty. Gen.*, Civil Action No. 3:14-CV-3089-D, 2014 WL 5039461, at *1, 3 (N.D. Tex. Oct. 9, 2014) (noting that "[w]hen Eleventh Amendment immunity applies, it deprives the court of subject matter jurisdiction," and granting defendant's motion to dismiss under Rule 12(b)(1) based on such immunity).

   B. **The District Court should dismiss claims one, two, five, six, seven, eight, and nine of San Miguel's Complaint, insofar as Cynthia Jumper is named a Defendant to them, because San Miguel only nominally mentions her as a Defendant and alleges no facts demonstrating constitutional violations committed by Jumper with respect to those claims.**

San Miguel's Complaint, in its prayer for relief, seeks monetary damages from Defendant Jumper with respect to all nine claims he raises in his Complaint. *See* Compl. 30. Thus, San Miguel has arguably attempted to name Jumper as a Defendant to all nine claims. But San Miguel does not allege a single fact with respect to claims one, two, five, six, seven, eight, or nine that connect her to the constitutional violations alleged. *See id.* at 17–26. At most, he lumps Defendant Jumper in with all other Defendants, generally accusing them of violating his rights but specifying no facts demonstrating violations by Defendant Jumper.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Vague and non-specific allegations of wrongdoing are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir.

9

2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019). In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers in analyzing their complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

Here, San Miguel's allegations do not even rise to the level of vague and conclusory—they are practically non-existent with respect to claims one, two, five, six, seven, eight, and nine. As such, the District Court should dismiss those claims insofar as Defendant Jumper is named as a Defendant.

    **C. The District Court should dismiss claims three and four of San Miguel's Complaint because he does not allege personal involvement or implementation of a policy by Defendant Jumper that gives rise to constitutional breaches.**

Claim three is premised on allegations that San Miguel chipped a tooth in September 2015, and that a dentist informed him he risks losing the tooth if it is not repaired. Compl. 19. He asserts that Defendants McLane and Searcy have denied him such treatment, and that Searcy has specifically told him that the TCCC "[was] not gonna pay to fix it." *Id.* San Miguel further claims that "Defendants also deny San Miguel teeth cleanings, or any type of dental checkups of any

kind." *Id.* San Miguel then compares his dental care while housed at the TCCC to that provided while he was an inmate in the TDCJ, averring that his treatment at the TCCC is "worse" than his treatment in TDCJ. *Id.* Finally, San Miguel states, "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC." *Id.*

As to claim four, San Miguel alleges that "Defendants expect San Miguel to pay for his own dental care, yet he is completely deprived of his liberty and forced to remain indigent at the TCCC as he cannot seek gainful employment." *Id.* at 20. San Miguel then references a grievance response attached to his Complaint, answered by "A. Maldonado," stating that "Texas Tech does not provide Dental Care. Submit a Communication to Captain Pierce, stating where and what you need specifically done. MTC will schedule self pay appointments. Texas Tech provides Emergency dental care only." *Id.*; ECF No. 1-3, at 64.

Defendant Jumper argues that San Miguel has not set forth any specific allegations of wrongdoing by Jumper, and he only generally groups Jumper in with other Defendants who he vaguely claims have "each denied Plaintiff . . . dental care . . . since May 2019." ECF No. 22, at 4, 6 (quoting Compl. 19).

A supervisory official is not liable for the acts of her subordinates unless she: (1) affirmatively participated in an act that caused a constitutional deprivation, or (2) implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at

303. As noted above, vague or non-specific allegations of wrongdoing will not suffice to state a claim. *Sias*, 146 F. App'x at 720; *see also Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant . . . . To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force in causing the plaintiff's harm.").

Construed most generously in San Miguel's favor, his claims are premised on nothing more than conclusory and bare assertions of responsibility based on Defendant Jumper's alleged status as a high-ranking Texas Tech official; he seeks to hold Defendant Jumper liable simply because of the position she holds, not because of anything she did. The only aspect of San Miguel's allegations that pertain to Defendant Jumper's purported actions is that she, along with five other Defendants, "denied" San Miguel access to dental care. Compl. 19. San Miguel does not explain how Defendant Jumper denied the dental care that San Miguel says he needs. In fact, per San Miguel's Complaint, the only person who seems to have explicitly taken action to deny dental care is Defendant Searcy, who allegedly told San Miguel that the TCCC would not pay to fix his teeth. *Id.* Other than his conclusory statement that Defendant Jumper "denied" him access to dental care, San Miguel sets forth no factual allegations that, if true, would "allow[] the court to draw the reasonable inference" (*Iqbal*, 556 U.S. at 678) that Defendant Jumper was personally involved in the alleged denial of dental care.

Moreover, at no point in San Miguel's Complaint does he allege that Defendant Jumper implemented any policy, let alone that she implemented *this* policy concerning dental care. San Miguel merely asserts that she is the "Vice President- Health Policy & Special Health Initiatives- at Texas Tech University Health and Science Center Managed Care . . . who is contracted with the

TCCC" (Compl. at 14) and that she "is legally responsible for the constitutionally adequate standard of medical care provided to the TCCC patients, as well as ensuring that plaintiff receives the medical/psychiatric/dental care he is entitled to." *Id.* at 17. Even if the Court were to assume that Defendant Jumper, due to her position, is generally responsible for policies regarding care provided at the TCCC, it does not cure the defect requiring dismissal of San Miguel's claims: He has not alleged with any degree of specificity that Defendant Jumper implemented the policy that he claims is the source of the alleged constitutional violations. There are *no* factual allegations in San Miguel's Complaint that, if taken as true, would support such a claim against Defendant Jumper. San Miguel simply names every person with a title that he thinks *might* have some policymaking role, Defendant Jumper among them, and claims that they should be held liable. *See id.* at 19 (alleging that "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC").[6] His claims are supported by nothing more than naked, conclusory assertions of responsibility without any factual support. Such vague and conclusory statements do not warrant a presumption of truth nor do they state a claim. *See Iqbal*, 556 U.S. at 679 ("[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). As such, the District Court should dismiss San Miguel's claims that Defendant Jumper denied him dental treatment or otherwise implemented a policy that led to the denial of dental treatment. *See Reagan v. Burns*, Civil Action No. 3:16-CV-2590-G-BH, 2019 WL

---

[6] Per San Miguel's Complaint, Defendant Kingston is the "TCCO/TCCC Unit Manager," Defendant Salinas is "San Miguel's TCCO Case Manager," Defendant Cochran is "MTC regent [sic] 3 Director/TCCC Facility Administrator," Defendant Jumper is Texas Tech's "Vice President- Health Policy & Special Health Initiatives- Managed Care," Defendant Caldwell is a "TCCC Project Manager," and Defendant Castro is a "TCCC Primary Care Provider." Compl. 17. With respect to each Defendant, San Miguel asserts that they are "legally responsible for the constitutional standard of medical care" he receives, or some variation thereof. *Id.*

6733023, at *16 (N.D. Tex. Oct. 30, 2019) (recommending dismissal of prisoner's diet-based claims as conclusory and therefore insufficient to state a claim), *R. & R. adopted by* 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019); *Wade v. Travis Middle Sch.*, No. 3:11-CV-0276-G (BK), 2011 WL 3880481, at *4 (N.D. Tex. Aug. 9, 2011) (recommending dismissal of § 1983 claims alleging discrimination because they were general and conclusory), *R. & R. adopted by* 2011 WL 3897855 (N.D. Tex. Sept. 1, 2011).

### D. The District Court should dismiss San Miguel's official capacity claims for injunctive relief against Defendant Jumper because he has not alleged sufficient facts showing a viable underlying claim.

A plaintiff must plead and prove, inter alia, a substantial likelihood of success on the merits to qualify for injunctive relief. *Jackson v. Fed. Home Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). To obtain a permanent injunction related to an alleged constitutional violation, the plaintiff must establish in fact that such a violation occurred. *Jabr v. Rapides Par. Sch. Bd. ex rel. Metoyer*, 171 F. Supp. 2d 653, 666 (W.D. La. 2001). As demonstrated above, San Miguel has failed to plead sufficient facts showing that Defendant Jumper personally engaged in any conduct that violated the Constitution.

Moreover, "[i]t is well established that a § 1983 plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*." *Maley v. Texas*, Civil Action No. 2:13-CV-189, 2014 WL 320159, at *5 (S.D. Tex. Jan. 29, 2014) (citing *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001)); *see McClain v. Yeakel*, No. A-15-CA-080-SS, 2015 WL 1003867, at *2 (W.D. Tex. Mar. 5, 2015) (citing *Iqbal*, 556 U.S. at 676)), *R. & R. adopted by* 2015 WL 1519183 (W.D. Tex. Mar. 31, 2015). Because San Miguel pursues his claims against Defendant Jumper under a theory of *respondeat superior*,

i.e., liability based upon her status as a high-ranking official rather than conduct directly attributable to her, dismissal of San Miguel's request for injunctive relief is appropriate. *See Gonzales v. Currie*, Civil Action No. 2:13-CV-201, 2014 WL 222353, at *6, *11 (S.D. Tex. Jan. 21, 2014) (adopting recommendation to dismiss claims for nominal damages, punitive damages, and injunctive relief against prison warden because plaintiff had not alleged personal involvement or implementation of an unconstitutional policy); *Wallace v. Dretke*, No. Civ.A. 104CV195C, 2004 WL 1932862, at *3–5 (N.D. Tex. Aug. 27, 2004) (dismissing at screening inmate's claim for declaratory and injunctive relief against defendants who allegedly (1) failed to provide psychiatric treatment, (2) were "ultimately responsible" for medical treatment, and (3) were "responsible for policy-making within TDCJ" because vicarious liability does not apply to § 1983 claims and inmate pleaded no facts showing defendants' affirmative participation in unlawful acts or implementation of an unconstitutional policy); *see also Johnson v. CitiMortgage, Inc.*, Civil Action No. 3:14–CV–1794–M–BH, 2015 WL 269970, at *5 (N.D. Tex. Jan. 21, 2015) (denying claim for injunctive relief where breach of contract claim was subject to dismissal on the merits and plaintiff therefore could not "establish any likelihood of success on the merits").

## V.     Conclusion

For these reasons, the undersigned recommends that the United States District Judge **GRANT** Defendant Cynthia Jumper's "Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6)" (ECF No. 21) and **DISMISS WITHOUT PREJUDICE** Plaintiff Samuel San Miguel's claims for monetary relief against Defendant Cynthia Jumper in her official capacity, and **DISMISS WITH PREJUDICE** all of Plaintiff Samuel San Miguel's remaining claims against Defendant Jumper in her individual and official capacities.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: November 25, 2020.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**