IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SAMUEL SAN MIGUEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 5:20-CV-041-BQ |
| v. | § | |
| | § | |
| JOHN COCHRAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Courtney[1] Bearden's "Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)"[2] and brief in support. ECF Nos. 27, 28. For the reasons stated herein, the undersigned United States Magistrate Judge recommends that the United States District Judge **GRANT** Defendant Bearden's Motion to Dismiss.

### I.     Procedural History

Plaintiff Samuel San Miguel initially filed this action in state court alleging violations of his constitutional rights by Defendants Texas Tech University Health Sciences Center (Texas Tech), Marsha McLane, Michael Searcy, Racheal Kingston, Chris Salinas, John Cochran, Cynthia Jumper, Taylor Caldwell, Joanne Castro, Cortney Bearden, and Debra Keesee. Compl. 13–15, ECF No. 1-3.[3] Defendant John Cochran removed this case, with the consent of Defendants

---

[1] Based on her filings, it appears Defendant's first name is spelled "Courtney" rather than "Cortney." ECF Nos. 27, 28. The Court will therefore use this spelling for Defendant's name.

[2] Bearden titles her motion a *partial* motion to dismiss but seeks dismissal of "all claims against her." ECF No. 28, at 6. The Court construes the motion's title as referencing the fact the motion does not seek dismissal of claims against defendants other than Bearden.

[3] Page citations to San Miguel's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

McLane, Searcy, Kingston, Salinas, Castro, and Keesee, from the 154th Judicial District Court of Lamb County, Texas, to this Court on February 21, 2020.[4]  ECF No. 1, at 2–3.  On August 11, 2020, Defendant Bearden filed her Motion to Dismiss and brief in support.  ECF Nos. 27, 28.

## II.    Standard of Review

### A. Rule 12(b)(1), Lack of Subject Matter Jurisdiction

The United States Constitution provides federal courts with original jurisdiction to hear only limited types of cases and controversies. *See* U.S. CONST. art. III, § 2.  "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider," and that power extends to determining "when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007).  Federal courts "cannot act without authority from Congress or the Constitution." *La. Real Estate Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 394 (5th Cir. 2019) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute . . . , which is not to be expanded by judicial decree.").

The burden of establishing jurisdiction lies with the party seeking to invoke the federal forum, and a court "must presume" the suit lies outside its limited grant of jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing [the] action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

---

[4] The removal was procedurally defective because Defendant Caldwell, who had been properly served at the time of removal, did not consent to the removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.").  That defect is of no consequence, however, because San Miguel did not file a motion to remand within thirty days of the Notice of Removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *see also Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 543, 554 (S.D. Tex. 2015) (citing 28 U.S.C. § 1447(c)).

In determining whether jurisdiction exists, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). Where a court accepts as true a plaintiff's allegations in evaluating its jurisdiction, and does not consider evidentiary materials outside the pleading, this constitutes a facial review for purposes of determining subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (explaining that under facial, as opposed to factual, analysis, the court accepts as true the complaint's allegations to determine whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction").

### B. 12(b)(6), Failure to State a Claim

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility").

A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

### III.    Background

#### A. San Miguel's Claims

San Miguel asserts nine claims in his Complaint, and he nominally seeks relief against Defendant Bearden as to claims one, three, four, five, six, seven, eight, and nine.[5] *See* Compl. 26–27, 30. San Miguel requests both monetary damages and injunctive relief.[6] *Id.* at 29–30.

San Miguel is a civilly committed sexually violent predator (SVP) housed at the Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), in Littlefield, Texas. *Id.* at 13, 16. He has been housed in the TCCC since September 2015. *Id.* at 16. The TCCC is operated by the Texas Civil Commitment Office (TCCO). *Id.* Per San Miguel's Complaint, Defendant Bearden "is the TTU Psych Nurse Practitioner for TCCC medical dpt." (*id.* at 15), and she "is legally responsible for the accepted professional judgment standard of Psychiatric care provided to the TCCC patients as well as ensuring that plaintiff receives the psychiatric medication he has been proscribed [sic] and needs, and acts directly in concert with

---

[5] In listing the relief he seeks from various Defendants, San Miguel requests $300,000 in compensatory damages from "Defendants Texas Tech University, Jumper, Caldwell, Castro, Bearden, and Keesee jointly and severally, as the relief demanded in the complaint for Claims 5, 6, 7, 8, & 9 . . . ." Compl. 30 (emphasis omitted). In outlining claims one, three, and four, San Miguel states that "Defendants As A Whole" violated his rights, but he does not specifically name Defendant Bearden. *Id.* at 26–28 (emphasis omitted). Claim two alleges a food deprivation claim against Defendants McLane, Searcy, Kingston, Salinas, and Cochran but not Defendant Bearden. *See id.* at 27.

[6] San Miguel seeks a "PERMANENT INJUNCTION" requiring Defendants to provide all food, medicine, and treatment, both physical and psychological, he alleges Defendants have unconstitutionally denied him. *See* Compl. 29.

Debra Keesee." *Id.* at 17. San Miguel is suing Defendant Bearden in her individual and official capacities. *Id.* at 15.

San Miguel's first two claims allege that "[t]he defendants do not provide enough nourishment for Plaintiff at the TCCC, he is left with hunger pains during the day and [when he] goes to sleep at night," and that the TCCC denies him access to care packages from his family because he has not taken a polygraph examination *Id.* at 17–19. Specifically, San Miguel asserts that the "TCCC has a custom of denying the TCCC patients and San Miguel an adequate diet." *Id.* at 18. San Miguel claims that he began experiencing "extreme weight loss" in 2016, leading to a medical order for extra calories in the form of a "4oz calorie health shake with meals." *Id.* San Miguel states that this order remained in effect for two-and-a-half years, but that on March 1, 2019, the TCCC discontinued his shakes "without consulting him or even checking his weight." *Id.* San Miguel claims "[t]his was the result of a TCCC facility wide sweep, that discontinued every patients [sic] calorie shake on [sic] the facility, TCCC did this to cut spending." *Id.* He alleges that, from May 1 to August 16, 2019, his weight dropped from 162 pounds to 150 pounds and claims "that defendants are starving him, his family is worried about him, and he is in fear for his physical safety." *Id.* In connection with this weight loss, San Miguel asserts that he "has begged defendants Searcy, Kingston, and Salinas, to allow him to receive a package of food from his family yet they have refused him this for over a [sic] 1 year and 8 months." *Id.* He then avers that "Searcy has laughed at plaintiff multiple times, when he has personally denied San Miguel's request to have a care package." *Id.* at 18–19. According to San Miguel, the basis for denying him care packages is that "he has not taken a polygraph exam." *Id.* at 19.

The third claim is premised on allegations that San Miguel chipped a tooth in September 2015, and that a dentist informed him he risks losing the tooth if it is not repaired with a filling.[7] *Id.* He asserts that Defendants McLane and Searcy have denied him such treatment, and that Searcy has specifically told him that the TCCC is "not gonna pay to fix it." *Id.* San Miguel further claims that "Defendants also deny San Miguel teeth cleanings, or any type of dental checkups of any kind." *Id.* San Miguel then compares his dental care while housed at the TCCC to that provided while he was an inmate in the Texas Department of Criminal Justice (TDCJ), averring that his treatment at the TCCC is "worse" than his treatment in TDCJ. *Id.* Finally, San Miguel states, "Defendants Kingston, Salinas, Cochran, Jumper, Caldwell, and Castro have each denied Plaintiff this dental care for the entire time they have been employed or contracted with the TCCC." *Id.*

With respect to the fourth claim, San Miguel alleges that "Defendants expect San Miguel to pay for his own dental care, yet he is completely deprived of his liberty and forced to remain indigent at the TCCC as he cannot seek gainful employment." *Id.* at 20. San Miguel then references a grievance response attached to his Complaint, answered by "A. Maldonado," stating that "Texas Tech does not provide Dental Care. Submit a Communication to Captain Pierce, stating where and what you need specifically done. MTC will schedule Self Pay appointments. Texas Tech provides Emergency dental care only." *Id.*; ECF No. 1-3, at 64.

Claims five through nine of San Miguel's Complaint relate to his psychiatric medical care and medications, which he alleges not to have received for various reasons. *Id.* at 20–26. Specifically, San Miguel alleges that in September 2019, when Texas Tech took control of mental health care at the TCCC, its policies changed and he no longer received adequate psychiatric care.

---

[7] San Miguel does not specify when the dentist made this determination.

6

*Id.* at 20–21. San Miguel avers that in November 2019, Defendants Keesee and Bearden "suddenly stopped providing him his antipsychotic medication Seroquel, which he had been taking for 2 [and a half] years," causing him to experience withdrawal symptoms. *Id.* at 21. San Miguel further asserts Defendant Keesee thereafter denied him his Wellbutrin medication. Compl. at 21–22. According to San Miguel, Defendants Keesee and Bearden stopped his medications because blood tests showed the medications either were not present in his blood or were at very low levels, which he claims was a fabrication. *Id.* San Miguel claims that Defendants regularly ignored his requests for medical attention in November 2019. *Id.* at 22–24. San Miguel avers that for fifteen days, he "was left to endure the withdrawal effects that the Warning Label of the Medication warns about." *Id.* at 25. San Miguel states that TCCC officials later provided him with 3mg of melatonin and 50mg of crushed Zoloft (ordered by Bearden) from November 26 through December 30, 2019, in an effort to help him sleep, but he claims this was ineffective. *Id.* at 25–26. According to San Miguel's Complaint, Defendants have deprived him of "any antipsychotic, psychotropic, any medicine at all, completely denied medical treatment for his serious need [sic]." *Id.* at 26. As to claim nine, San Miguel alleges that on December 30, 2019, Defendant Bearden saw him via a TeleMed consultation but that, after "he told Defendant Bearden that he wrote a grievance against her with the Texas Board of Nursing," she ended the consultation and would not address his sleeplessness. *Id.* at 26, 28.

## B. Defendant Bearden's Motion to Dismiss

Defendant Bearden filed her Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 11, 2020, identifying multiple grounds for dismissing San Miguel's claims. ECF Nos. 27, 28. First, Defendant Bearden argues that the official capacity claims against her for monetary relief must be dismissed because the Eleventh Amendment

provides immunity from such claims. ECF No. 28, at 2.[8] Second, Defendant Bearden conclusorily asserts that San Miguel is not entitled to injunctive relief, merely citing broad principles concerning grants of injunctive relief and stating that "[San Miguel] fails to demonstrate how an injunction would correct a violation of a federal right." *Id.* at 2–3. She then contends that San Miguel has not pleaded adequate facts to state a claim for violation of his Fourteenth Amendment right to Due Process. *Id.* at 3–5. Defendant Bearden concludes by arguing that qualified immunity shields her from San Miguel's individual capacity claims. *Id.* at 5–6.

San Miguel did not file a response to the motion, and it is now ripe for review.

## IV.    **Discussion**

The District Court should dismiss San Miguel's official capacity claims for monetary damages because applicable immunities deprive the Court of subject matter jurisdiction. San Miguel's individual capacity claims against Defendant Bearden are also subject to dismissal because he (1) only nominally names Defendant Bearden as to claims one, three, and four, and (2) has failed to allege a cognizable constitutional violation with respect to claims five, six, seven, eight, and nine.

### A. The District Court should dismiss without prejudice San Miguel's claims for monetary damages against Defendant Bearden in her official capacity because she is immune from such claims and the Court lacks subject matter jurisdiction to adjudicate them.

San Miguel's Complaint seeks $300,000 in monetary damages from Defendant Bearden— jointly and severally with other named Defendants. Compl. 30. San Miguel has sued Bearden in both her individual and official capacities. *Id.* at 15. It is well established that suits for monetary damages against state officials in their official capacities are barred by state sovereign immunity

---

[8] Page citations to Defendant Bearden's brief refer to the electronic page number assigned by the Court's electronic filing system.

and Eleventh Amendment immunity. *See Almond v. Tarver*, 468 F. Supp. 2d 886, 892–95 (E.D.

Tex. 2006) (collecting authorities and holding that claim against state official in his official

capacity was barred by sovereign and Eleventh Amendment immunities). As such, any claim for

monetary damages against Bearden in her official capacity must be dismissed. *See Little v. Tex.

Atty. Gen.*, Civil Action No. 3:14-CV-3089-D, 2014 WL 5039461, at *1, 3 (N.D. Tex. Oct. 9,

2014) (noting that "[w]hen Eleventh Amendment immunity applies, it deprives the court of subject

matter jurisdiction" and granting defendant's motion to dismiss under Rule 12(b)(1) based on such

immunity).

**B. The District Court should dismiss claims one, three, and four of San Miguel's Complaint, insofar as Courtney Bearden is named a Defendant to them, because San Miguel only nominally names her as a Defendant and alleges no facts demonstrating constitutional violations committed by Bearden with respect to those claims.**

San Miguel's Complaint alleges that "Defendants As A Whole" violated his rights with

respect to claims one, three, and four. *See* Compl. 26–27. Thus, San Miguel has presumably

named Bearden as a Defendant to those claims, but San Miguel does not allege a single fact that

connects her to the purported constitutional violations. *See id.* at 15–26. At most, he lumps

Defendant Bearden in with all other Defendants, generally accusing them of violating his rights

but specifying no facts demonstrating violations by Defendant Bearden.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson

v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Vague and non-specific allegations of wrongdoing

are insufficient to support a § 1983 claim. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir.

2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983

claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE

NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes

Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true

'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019). In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers in analyzing their complaints, they must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

Here, San Miguel's allegations do not even rise to the level of vague and conclusory; they are practically non-existent with respect to claims one, three, and four. As such, the District Court should dismiss those claims insofar as Bearden is named as a Defendant.

**C. The District Court should grant Defendant Bearden's Motion to Dismiss as to claims five, six, seven, and eight because the decision to discontinue or substitute medication is within her authority to make a medical judgment, and because San Miguel does not allege that Defendant Bearden personally refused to treat his withdrawal symptoms.**

Claims five through eight are premised on allegations that Defendant Bearden denied San Miguel psychiatric medical care and medications. Compl. 27–28. He claims that in November 2019, Defendants Bearden and Keesee discontinued his Seroquel and Wellbutrin medications, causing him to experience withdrawal symptoms and thereby showing "callous disregard for his safety and wellbeing." *Id.* at 21. According to San Miguel, Defendants Keesee and Bearden stopped his medications because blood tests showed the medications either were not present in his blood or existed at very low levels, which he asserts was a fabrication. *Id.* at 21–22. He claims they stopped his medications "in order to cut spending." *Id.* at 22. In doing so, he alleges that Defendants violated his "Fourteenth Amendment Substantive Due Process Rights To Adequate Medical Care, And Psychological Clinical Treatment." *Id.* at 27 (emphasis omitted). In addition,

San Miguel asserts that Defendant Bearden was deliberately indifferent when she denied him psychiatric care, denied his prescribed medications, ignored his complaints during withdrawal, and denied care because he broke the institution's rules. *Id.* at 27–28.

According to San Miguel, several Defendants, including Bearden, regularly ignored his requests for medical attention, and that for fifteen days he "was left to endure the withdrawal effects that the Warning Label of the Medication warns about." *Id.* at 22–25. San Miguel states that on November 26, Defendant Bearden saw him and "was very unprofessional during the consultation and lied . . . multiple times." *Id.* at 24. He alleges that she "contradicted the Pharmacology warnings of his medication, stating that he could not suffer withdrawls [sic] by stopping his medication" and the two discussed her belief that San Miguel was not compliant with his medication due to his blood test results. *Id.* According to San Miguel, Bearden told him "he could not have his medication because he had a history of breaking the rules at the facility" and "need[s] to learn that there are consequences for [his] actions." *Id.* at 25 (emphasis omitted). That same day, Defendant Bearden purportedly ordered 3mg of melatonin and 50mg of crushed Zoloft until December 30, 2019, in an effort to help San Miguel sleep, but he claims that this was ineffective. *Id.* at 25–26.

Defendant Bearden argues that San Miguel "has failed to state a claim for relief for a Fourteenth Amendment violation for provision of adequate medical care," and contends that his "claims are more properly asserted as an Eighth Amendment" violation. ECF No. 28, at 4. She cites authority holding that mere negligence is not enough (*id.* (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986))), arguing that "to constitute a substantive due process violation, the governmental officer's actions must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Morris v. Dearborne*, 181 F.3d 657, 668 (5th

11

Cir. 1999)) (internal quotation marks omitted). She does not, however, analyze this authority in the context of San Miguel's claims against her and instead conclusorily argues that "[b]ecause [San Miguel] has failed to state a substantive due process violation, the Fourteenth Amendment claims against Defendant Bearden should be dismissed." *Id.* at 4–5. Finally, to the extent that San Miguel sues Defendant Bearden in her individual capacity, she argues that qualified immunity shields her from suit because she did not violate any clearly established constitutional right, and even if she did, her actions were objectively reasonable. *Id.* at 5–6.

"Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kremelberg v. Keeling*, Civil Action No. 3:15-CV-3695-K-BH, 2016 WL 7744408, at *3 (N.D. Tex. Dec. 12, 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), *R. & R. adopted by* 2017 WL 131822 (N.D. Tex. Jan. 12, 2017). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, a court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (directing that a plaintiff must "state a claim to relief that is plausible on its face"—excluding statements that are "no more than conclusions" which are "not entitled to the assumption of truth"). More specifically, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

Once a government defendant raises the issue of qualified immunity, "the burden shifts to the plaintiff to rebut the defense." *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *5 (N.D. Tex. July 10, 2015) (citing *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 456 (5th Cir. 2001)). "To satisfy that burden on a motion to dismiss, the plaintiff must claim that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable in light of law that was clearly established at the time of the conduct." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 479 (N.D. Tex. 2019). Accordingly, the threshold question here is whether, accepting San Miguel's allegations as true, Defendant Bearden violated San Miguel's constitutional right to adequate medical care, and then, if so, whether Defendant Bearden's actions were objectively unreasonable. *See id.*

As a civilly committed person, San Miguel's right to reasonably adequate medical care derives from the Eighth Amendment.[9] *See Rogers v. Caswell*, 823 F. App'x 263, 264–65 (5th Cir. 2020) (analyzing whether civilly committed plaintiff pleaded facts supporting claim for deliberate indifference to serious medical needs); *Bohannan v. Doe*, 527 F. App'x 283, 292 (5th Cir. 2013) (applying Eighth Amendment standard to SVP's claim for deliberate indifference to serious medical needs); *see also Clark v. Rivas*, CIVIL ACTION NO. 5:17-CV-228-M-BQ, 2018 WL 3950429, at *5 (N.D. Tex. July 17, 2018) (same), *R. & R. adopted by* 2018 WL 3946456 (N.D. Tex. Aug. 16, 2018).

---

[9] Although San Miguel's pleading refers to the Fourteenth Amendment, the Court liberally construes his Complaint as alleging violations under the Eighth Amendment. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that a pro se document is to be liberally construed and is held to less stringent standards than pleadings drafted by lawyers). The Fifth Circuit evaluates a civil committee's medical claims under the Eighth Amendment, *Rogers*, 823 F. App'x at 264–65, although the Court notes that some other circuits examine these claims under the Fourteenth Amendment. *See, e.g., Mitchell v. Washington*, 818 F.3d 436, 443 (9th Cir. 2016); *Patten v. Nichols*, 274 F.3d 829, 835 (4th Cir. 2001). The Court therefore acknowledges, but ultimately finds no merit in, Defendant Bearden's argument that San Miguel cannot state a claim for relief because he cited the Fourteenth Amendment rather than the Eighth Amendment. *See* ECF No. 28, at 3–4.

Under the Eighth Amendment, institutional officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). To state a constitutional violation, a plaintiff must show that the institutional official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain. *Id.*; *see also Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs"). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation marks omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). Even where a plaintiff establishes the objective element, an Eighth Amendment violation occurs only the official (1) knew of the substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to alleviate it. *Id.*; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating prison officials are not liable for denial of medical treatment unless they know of and disregards an excessive risk to inmate health or safety).

An institutional official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Instead, an official "must both be aware of facts from

14

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show official was actually aware of risk and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a provider's decision not "to follow the recommendations of another treating physician does not amount to deliberate indifference." *Gobert*, 463 F.3d at 350 n.32. In sum, a plaintiff must demonstrate that staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Here, San Miguel raises four claims alleging deliberate indifference to his serious medical needs when Defendant Bearden denied his psychiatric medications. Compl. 27–28. Although the claims are similar, San Miguel asserts that Defendant Bearden was deliberately indifferent when she: denied psychiatric care by not treating his psychological disorders with medication (claim five), denied medications prescribed by another physician (claim six), ignored complaints during withdrawal (claim seven), and denied care because he broke the institution's rules (claim eight). *Id.* Stated alternatively, claims five, six, and eight all relate to the decision to stop San Miguel's

15

medication, and claim seven relates to the alleged denial of care when he experienced withdrawal symptoms from stopping his medication.

### 1. *Claims V, VI, and VIII*

In claims five, six, and eight, San Miguel does not plead facts demonstrating that Defendant Bearden engaged in conduct evincing a wanton disregard for his serious medical needs because "in the context of medications withdrawn or withheld, the Fifth Circuit has repeatedly stated that '[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.'" *Gray v. Brazoria Cty.*, CIVIL ACTION NO. 3:16-CV-109, 2017 WL 713797, at *4 (S.D. Tex. Feb. 23, 2017) (quoting *Rogers*, 709 F.3d at 409); *see also Carlisle v. Dunn*, Civil Action No. 6:13-CV-005-C ECF, 2015 WL 1239622, at *6–7 (N.D. Tex. Mar. 17, 2015) (affirming grant of summary judgment where doctor discontinued medication after inmate was caught hoarding medication and noting that the "choice in withdrawing the seizure medication was a sound medical decision"). Specifically, San Miguel admits that blood tests showed the medications either were not present in his blood or were at very low levels (Compl. 21–22), yet he claims that this was either a lie (*id.*), the result of his metabolism (*id.* at 24), or due to the medication's half-life. ECF No. 1-3, 162 (San Miguel's affidavit). Moreover, according to San Miguel, Defendant Keesee told him that the medication was "bad for [his] blood pressure, and bad for [his] anxiety" so they chose to discontinue it. ECF No. 1-3, 34 (San Miguel's verified declaration cited in Complaint). San Miguel thereby acknowledges that objective medical bases existed that justified the medical providers' decision to withdraw or discontinue his medication.

Even if the Court disregards these objective criteria, San Miguel's claims still fail. He also concedes that on November 26 Defendant Bearden offered to "give [him] a shot of Haldol every

2 weeks" to combat his Bipolar disorder, melatonin for his sleeplessness, and Celexa for his depression and ADD/ADHD, which he refused.  ECF No. 1-3, 43 (San Miguel's verified declaration cited in Complaint).  Ultimately, San Miguel accepted Defendant Bearden's offer to provide Zoloft.  Compl. 25.  Properly construed, rather than alleging that Defendant Bearden refused *all* care or treatment, San Miguel instead expresses dissatisfaction with the type of care and medication Defendant did provide—and disagreement with medical treatment does not constitute deliberate indifference.  *See Smith v. Larpenter*, CIVIL ACTION NUMBER: 16-15778, 2017 WL 2773662, at *7 (E.D. La. May 3, 2017) (citing *Brauner v. Coody*, 793 F.3d 493, 498–99 (5th Cir. 2015)) ("[T]he decision of which specific medication to prescribe Plaintiff is a classic example of a matter of medical judgment which is not actionable under § 1983."); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (noting that prisoner's allegation amounted to disagreement with treatment where prisoner solely alleged prison doctor did not prescribe the medication prisoner desired).  Thus, San Miguel's own assertions undermine his allegation that Defendant Bearden denied medical care.

As to claim eight, San Miguel similarly has not pleaded facts showing a constitutional violation where Defendant Bearden allegedly withheld medication because he had a history of breaking the institution's rules.  Compl. 28.  Medical professionals are entitled to consider an inmate-patient's compliance when making medical decisions.  *Smith v. Tom Green Cty. Jail*, Civil No. 6:17-CV-0055-BL, 2018 WL 3873665, at *10 (N.D. Tex. Aug. 15, 2018) ("In general, prison officials may appropriately consider whether an inmate is . . . non-compliant with prescribed medication . . . or otherwise engages in conduct which indicates that the inmate himself does not view a medical condition as serious or as requiring additional or different treatment.").

While San Miguel disagrees with the decision to discontinue his then current medications and prescribe new ones, and may have preferred that Defendant Bearden or Keesee administer a second blood test (Compl. 23) or provide his choice of medication (*id.* at 25), such decisions rest within Defendants' sound medical judgment. *See, e.g.*, *Domino*, 239 F.3d at 756 (stating that the decision of whether to provide additional medical treatment is an example of pure medical judgment; the exercise of such judgment does not constitute deliberate indifference). At best, San Miguel's allegations *might* give rise to a state law claim for negligence or malpractice but would again fall short of stating a viable constitutional claim under § 1983. *See Gobert*, 463 F.3d at 346. And without an underlying constitutional violation, Defendant Bearden is entitled to qualified immunity. *See Blakely*, 360 F. Supp. 3d at 479 (holding that qualified immunity applies unless "the court answers both the constitutional violation and clearly established questions in the affirmative").

Accordingly, the undersigned recommends dismissal of claim five because, contrary to San Miguel's initial allegation, his Complaint establishes that Defendant Bearden treated his psychological disorders (*Larpenter*, 2017 WL 2773662, at *7); claim six because the decision to discontinue medication is a medical judgment (*Carlisle*, 2015 WL 1239622, at *6); and claim eight because although San Miguel disagrees with Defendant Bearden's decision to deny medication of his choice because he broke the institution's rules, as a medical professional, Defendant Bearden is empowered to make that determination. *Smith*, 2018 WL 3873665, at *10.

### 2. Claim VII

San Miguel alleges that Defendant Bearden was deliberately indifferent to his serious medical needs when she "ignor[ed] his complaints and requests for help while he suffered injury, physically, emotionally, and mentally" after she discontinued his medications. Compl. 28.

18

According to his Complaint, "each night he pleaded with the TTU Nurse who brought the Medication to the SMU, for help, he was ignored and denied help," and also "pleaded with RN Joe Brown who passes out medication to SMU, multiple times to give him something to sleep." *Id.* at 22. San Miguel avers that beginning November 12, he "was not even seen by any professional in the TCCC Medical Department until Tuesday November 19, 2019 when he was called down to the infirmary by Keesee." *Id.* San Miguel alleges that he experienced severe withdrawal symptoms, including sickness, headaches, sleeplessness, emotional distress, shaking, vomiting, sweating, and physical pain, and that between November 11 through November 26, "he wrote multiple TCCC grievances, and pleaded with multiple security staff, who called the medical dept., who did nothing." *Id.* at 23–24. He claims he "was laughed at by TCCO/MTC/TTU each time he begged them for help." *Id.* at 25. Notably, he does not again mention Defendant Bearden until he describes a meeting on November 26, during which Defendant Bearden ordered melatonin and Zoloft to treat San Miguel's sleeplessness and depression. *Id.*; ECF 1-3, 43–44 (San Miguel's affidavit cited in Complaint).

Accepting San Miguel's allegations as true and viewing them in the light most favorable to San Miguel, as required at this stage of the proceedings, his withdrawal symptoms, as described, could qualify as a serious medical need. *See Grant v. Fortner*, 487 F. App'x 169, 170 (5th Cir. 2012) ("The failure to treat drug withdrawal symptoms may state a constitutional claim."); *Thompson*, 245 F.3d at 457 (alcohol withdrawal's delirium tremens is a serious medical need); *Carrillo v. Buendia*, Civil Action No. 2:20-CV-28, 2020 WL 4584380, at *16–17 (S.D. Tex. Aug. 10, 2020) (prisoner's "serious physical withdrawal as well as psychological harm" where "[h]e was inconsolable, crying, anxious, paranoid, and fearful of bodily harm at the hands of other inmates and the guards who held him . . . supports a claim for failure to provide medical care");

*Quatroy v. Jefferson Par. Sheriff's Office*, Civil Action Nos. 04-451, 04-1425, 2009 WL 1380196, at *9 (E.D. La. May 14, 2009) (collecting cases).

Having concluded, for purposes of the present motion, that San Miguel has pleaded an objectively substantial risk of harm, the Court must examine whether San Miguel sufficiently pleads facts showing that Defendant Bearden subjectively knew of the risk and consciously disregarded it. *See Harris*, 198 F.3d at 159. To constitute deliberate indifference, an official must have refused to treat the plaintiff, ignored his complaints, intentionally mistreated him, or engaged in other similar conduct. *See Johnson*, 759 F.2d at 1238. Importantly, San Miguel does not plead facts suggesting that Defendant Bearden *directly* denied help (*see, e.g.*, Compl. 22 (asking TTU Nurse for help), 22 (asking RN Joe Brown for help), 23–24 (requesting help from guards), 25 (asking unspecified staff for help)), but instead asserts that he submitted several grievances over a two-week period, which he implicitly suggests notified Defendant Bearden of his withdrawal symptoms. *Id.* at 23–24, 28. As noted, personal involvement is a necessary element to San Miguel's claims. *Thompson*, 709 F.2d at 382. And while the Court must accept San Miguel's allegations and draw all inferences in his favor (*see Snow Ingredients, Inc.*, 833 F.3d at 520), he must nevertheless plead facts alleging that Defendant Bearden was actually aware of the risk of harm *and* consciously ignored it. *See Lawson*, 286 F.3d at 262. Where San Miguel does not plead such facts, his claim is subject to dismissal. *See Ezell*, 2015 WL 4191751, at *5 (noting that the burden shifts to the plaintiff to rebut the government defendant's qualified immunity defense).

In support of his Complaint, however, San Miguel attached several grievance forms from the relevant time period. *See* ECF No. 1-3, 78–86. Of the ten grievance forms, San Miguel's primary complaint is sleeplessness. *Id.* More specifically, all ten grievances ask for sleep medication, and only two of the forms reference San Miguel's withdrawal symptoms. *See id.* In

other words, in eight of the ten grievances, San Miguel merely complains of sleeplessness, which does not qualify as a serious medical need.[10] *See Dorton v. Freeman*, CIVIL ACTION NO. 2:14-cv-140-KS-MTP, 2016 WL 783402, at *6 (S.D. Miss. Feb. 5, 2016) (granting motion for summary judgment as to claim that defendants did not treat sleeplessness where detainee "failed to identify any serious medical condition he faced or any resulting substantial harm"), *R. & R. adopted by* 2016 WL 815007 (S.D. Miss. Feb. 29, 2016); *Watts v. S. Health Partners*, 3:15-CV-1721-L-BK, 2015 WL 7566284, at *2 (N.D. Tex. Oct. 8, 2015) (concluding that pre-trial detainee did not plead deliberate indifference to serious medical need where "he only complain[ed] of difficulties in using the restroom and sleepless nights"), *R. & R. adopted by* 2015 WL 7450544 (N.D. Tex. Nov. 24, 2015).

As to the two grievances complaining of possible withdrawal symptoms, there is no evidence to suggest that Defendant Bearden was aware of San Miguel's complaints. In a grievance received on November 16, San Miguel wrote, "I feel sick – I cant [sic] stop shaking in my cell I cant [sic] sleep." *Id.* at 83. Defendant Keesee responded to the grievance and wrote, "Pt seen in medical on 11/19/19, has a follow up appt with MH provider." *Id.* In the second grievance form complaining of possible withdrawal symptoms, San Miguel wrote, "I am having chest pains and shaking I cant [sic] sleep – please help." *Id.* at 84. Staff member "V. Velasquez" responded to

---

[10] Even if San Miguel's sleeplessness constituted a serious medical need, he does not plead facts suggesting that Defendant Bearden knew of the harm and *actually drew the inference*. In six of the eight forms, the "received by" portion of the forms reflect an illegible signature beginning with the letter "B," and other staff members (Velasquez and Keesee) responded to the grievances. *See* ECF 1-3, 80–82, 85–87. Thus, assuming the "B" signature is Defendant Bearden's, San Miguel does not allege, nor do the grievances themselves suggest, that she consciously disregarded a serious risk of harm because the grievance process alone is insufficient to place Defendant Bearden on notice. *See Whitlock v. Stephens*, CIVIL ACTION NO. 5:14cv94, 2016 WL 11474208, at *5, 10 (E.D. Tex. Oct. 5, 2016) (stating that prisoner "cannot use the grievance process to impute personal liability," where prisoner merely alleged that the defendants investigated and signed prisoner's grievance); *Lueck v. Wathen*, 262 F. Supp. 2d 690, 696 (N.D. Tex. 2003) (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)) (explaining that prisoner's claim against assistant warden, who served on prison grievance committee and allegedly wrongfully denied prisoner's grievance, failed to state a claim where prisoner did not allege warden was personally involved in any constitutional violation, as "[p]ersonal involvement is an essential element in a civil rights action").

the grievance and noted, "Brought to medical to have EKG conduct for 'chest pain.' Became aggressive; ignoring medical attempts to enter Exam Room #2. Escorted out by security." *Id.* Accordingly, even considering these grievances, San Miguel's Complaint does not indicate that Defendant Bearden was personally aware of San Miguel's risk of harm or that she consciously disregarded that risk—this failure is fatal to his claim. *See Harris*, 198 F.3d at 159; *see also Banks v. Thomas*, No. CIV. 11-301-GPM, 2012 WL 384527, at \*3 (S.D. Ill. Feb. 6, 2012) (concluding that allegations do not "amount[] to anything more than negligence, not . . . deliberate indifference" where doctor "abruptly discontinued the psychotropic medication . . . Seroquel, without giving [the plaintiff] anything to counteract the effect of withdrawal from the medication").

Where San Miguel has not pleaded an underlying constitutional violation, Defendant Bearden is entitled to qualified immunity. *See Blakely*, 360 F. Supp. 3d at 479 (holding that qualified immunity applies unless "the court answers both the constitutional violation and clearly established questions in the affirmative"). The undersigned therefore recommends that the District Judge grant Defendant Bearden's Motion to Dismiss for failure to state a claim as to claim seven.

**D. The District Court should grant Defendant Bearden's Motion to Dismiss as to claim nine because San Miguel does not sufficiently plead facts demonstrating that Defendant Bearden retaliated against him.**

As with claims five through eight, claim nine is similarly rooted in San Miguel's allegations that Defendant Bearden denied San Miguel psychiatric medical care. Compl. 27–28. San Miguel asserts that she deprived him of treatment as retaliation because "he told [her] that he wrote a grievance against her with the Texas Board of Nursing." *Id.* at 28. In support, San Miguel alleges that on December 30, Defendant Bearden saw him via a TeleMed consultation. *Id.* at 26. After San Miguel told Defendant Bearden that he filed a grievance against her, she purportedly ended

the consultation and would not address his sleeplessness.[11]  *Id.*  Defendant Bearden does not specifically address in her motion San Miguel's retaliation claim.  *See* ECF No. 28.

A plaintiff must demonstrate the following to establish a claim for retaliation:  "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation."  *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)).  Conclusory allegations, including a plaintiff's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation.  *Jones*, 188 F.3d at 325.  Instead, "'[t]he [plaintiff] must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.'"  *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166); *see also Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (applying *Woods* to an SVP's retaliation claim).

Here, Sam Miguel fails to state a viable retaliation claim.  Other than making the conclusory assertion that he believes Defendant Bearden's actions were retaliatory, San Miguel pleads no facts demonstrating that Defendant Bearden intended to retaliate or that he would have received additional treatment but for her retaliatory motive—Defendant Bearden had already prescribed melatonin to help San Miguel sleep.  Compl. 25.  Instead, San Miguel merely attaches the "retaliation" label to Defendant's purported actions.  Thus, the Court recommends dismissal of San Miguel's retaliation claim against Defendant Bearden.  *See, e.g., McCoy v. Berrera*, Civil

---

[11] In the "Legal Claims" portion of San Miguel's Complaint, he alleges that Defendant Bearden "completely stop[ped] any and all psychiatric medications and den[ied] him any type of psychiatric medication" after he told her about the grievance. Compl. 28.  According to the facts section, however, San Miguel did not tell Defendant Bearden, nor did he even file a grievance, until *after* she discontinued his medication.  *Id.* at 26 (alleging that he filed a grievance December 5 and told Defendant Bearden he did so during the December 30 appointment).  The Court therefore interprets claim nine as alleging that Defendant Bearden retaliated by failing to address San Miguel's sleeplessness. *See id.* ("After Plaintiff told Bearden that he had filed a grievance against her, she immediately said, 'Were [sic] Done!'. Plaintiff then stated 'what about my sleeplessness I can't sleep?' She answered 'Were [sic] done.'").

Action No. 7:18-CV-00061-M-BP, 2020 WL 2025641, at *5 (N.D. Tex. Mar. 31, 2020) (granting 12(b)(6) motion where retaliation claim was "simply too conclusory and unsupported by factual allegations to support a plausible claim for relief"), *R. & R. adopted by* 2020 WL 1986460 (N.D. Tex. Apr. 27, 2020); *Coronado v. Lennox*, Civil Action No. 5:12-CV-00044-BG, 2012 WL 7005384, at *2, *5 (N.D. Tex. Oct. 15, 2012) (recommending dismissal at screening of prisoner's retaliation claim premised on nothing more than prisoner's personal belief that he was victim of retaliation), *R. & R. adopted by* 2013 WL 440149 (N.D. Tex. Feb. 5, 2013); *Dotie v. Jones*, No. 2:10–CV–0128, 2010 WL 2668379, at *2 (N.D. Tex. June 16, 2010) (recommending dismissal of prisoner's retaliation claim because his conclusory allegations failed to satisfy the causation and retaliatory motive elements of his claim), *R. & R. adopted by* 2010 WL 2667680 (N.D. Tex. July 1, 2010); *Hines v. Graham*, 320 F. Supp. 2d 511, 521 (N.D. Tex. 2004) (finding prisoner failed to state a claim where even after the court provided him an "opportunity to expound on his retaliation claims, [prisoner] offer[ed] only his own conclusory opinion that the Defendants had a retaliatory motive"); *Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) (affirming dismissal of civilly committed sex offender's retaliation claim where he did not "sufficiently allege[] any direct 'causal link' between his therapist's actions and his First Amendment protected activities").

Moreover, San Miguel does not contend that he was chilled from continuing to pursue constitutionally protected activities; to the contrary, San Miguel subsequently filed the present suit. *See, e.g.*, *Morris v. Powell*, 449 F.3d 682, 685–86 (5th Cir. 2006) ("Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."); *Hill v. Gatson*, Civil Action No. G-03-966, 2007 WL 869536, at *2 (S.D. Tex. Feb. 15, 2007) (noting that prisoner had not alleged that defendant's filing of an allegedly false grievance "prevented or chilled [prisoner] from filing [additional] grievances");

*Johnson v. Parks*, No. Civ.A.5:03–CV–024–C, 2004 WL 2101669, at \*5 (N.D. Tex. Sept. 15, 2004) (dismissing prisoner's retaliation claim in part because he did not demonstrate that defendant's action caused prisoner to stop, or prevented him from, filing grievances or lawsuits), *aff'd*, 182 F. App'x 300 (5th Cir. 2006).

The magistrate judge therefore recommends that the district judge dismiss claim nine with respect to Defendant Bearden.

### E. The District Court should dismiss San Miguel's official capacity claims for injunctive relief against Defendant Bearden as to claims one, three, four, five, six, eight, and nine because he has not alleged sufficient facts showing a viable underlying claim; as to claim seven, the District Court should dismiss San Miguel's claim for injunctive relief because his conclusory allegation that he is at risk of irreparable harm is insufficient for such extraordinary relief.

San Miguel seeks a "PERMANENT INJUNCTION" requiring Defendants to provide the food, medicine, and treatment that he alleges Defendants have unconstitutionally denied him, "[t]o ensure in every way his treatment and conditions of confinement are more considerate, than the conditions of confinement are for criminals," and to prevent Defendants Bearden and Keesee from having authority to deny his prescriptions. Compl. 29.

Unlike claims for monetary relief, qualified immunity does not protect government officials from injunctive relief. *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir.1995). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "If . . . a less drastic remedy . . . [is] sufficient to redress [plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted" (*id.* at 165–66) because it "should only issue when essential." *Google, Inc. v. Hood*, 822 F.3d 212, 221 (5th Cir. 2016). To obtain a permanent injunction, a plaintiff must plead and prove "(1) the existence of a substantial threat of irreparable harm that outweighs any harm the relief would accord to the defendants, (2) that there is no adequate remedy

at law, and (3) that granting the injunction will not disserve the public interest." *Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002). And rather than simply proving a substantial *likelihood* of success on the merits, as with a preliminary injunction, to obtain "a permanent injunction . . . the plaintiff must demonstrate *actual* success on the merits." *Id.* (emphasis added). As demonstrated above, San Miguel has failed to plead sufficient facts showing that Defendant Bearden engaged in conduct that violated the Constitution with respect to claims one, three, four, five, six, eight, and nine. *See Johnson v. CitiMortgage, Inc.*, Civil Action No. 3:14–CV–1794–M–BH, 2015 WL 269970, at \*5 (N.D. Tex. Jan. 21, 2015) (denying claim for injunctive relief where breach of contract claim was subject to dismissal on the merits). The undersigned accordingly recommends that the district judge dismiss those claims with respect to Defendant Bearden.

As to claim seven, San Miguel's claim as pleaded does not show that he will suffer an irreparable injury absent the injunction, despite his conclusory statements to the contrary. *See* Compl. 26 ("Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grant [sic] the declaratory and injunctive relief which plaintiff seeks."). An irreparable injury is one "for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). San Miguel's conclusory and speculative allegations are insufficient to prove an irreparable injury. *See Starrett v. City of Richardson*, Civil Action No. 3:18-CV-0191-L, 2018 WL 4627133, at \*15 (N.D. Tex. July 27, 2018), *R. & R. adopted by* 2018 WL 3802038 (N.D. Tex. Aug. 10, 2018), *aff'd*, 766 F. App'x 108 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 122 (2019); *see also Cullum v. Tex. Dep't of Criminal Justice*, Civil Action No. G-05-0437, 2008 WL 4415155, at \*8 (S.D. Tex. Sept. 24, 2008) (granting summary judgment and denying injunctive relief because inmate's allegations were

conclusory and no more than "his personal belief that he is the victim of retaliation"). Dismissal is appropriate on this ground alone.

Moreover, San Miguel's surviving claim relates to a discrete two-week period where Defendant Bearden delayed treating his withdrawal symptoms. Because this is a single incident, he is not entitled to a permanent injunction. *See Deal v. Dep't of Corr.*, CIVIL ACTION NO.: 15-00534-BAJ-EWD, 2017 WL 6566198, at *6 (M.D. La. Dec. 22, 2017) (granting summary judgment against plaintiff because his excessive force claim "center[ed] around a single incident" and permanent injunction was therefore unwarranted). What is more, San Miguel's past injuries, if proven, are capable of being remedied by law. *See Miller v. Harrison Cty.*, NO. 1:07cv541-LG-JMR, 2008 WL 11435639, at *8 (S.D. Miss. Nov. 20, 2008) (granting motion for summary judgment and denying injunction because any harm inmate suffered by defendants' alleged denial of medical care could be remedied by damages).

Accordingly, the magistrate judge recommends dismissal of San Miguel's request for injunctive relief against Defendant Bearden.

## V.     Conclusion

For these reasons, the undersigned recommends that the United States District Judge **GRANT** Defendant Courtney Bearden's "Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)" (ECF No. 27) and **DISMISS WITHOUT PREJUDICE** Plaintiff Samuel San Miguel's claims for monetary relief against Defendant Courtney Bearden in her official capacity; **DISMISS WITH PREJUDICE** all Plaintiff Samuel San Miguel's claims for injunctive relief against Defendant Bearden in her official capacity; and **DISMISS WITH PREJUDICE** all claims against Defendant Bearden in her individual capacity.

Further, the undersigned recommends that the district judge enter judgment: (1) dismissing without prejudice San Miguel's claims for monetary relief against Defendants Bearden and Jumper in their official capacities; (2) dismissing with prejudice all remaining claims against Defendants Bearden and Jumper in both their official and individual capacities, as well as all claims against Cochran and Caldwell; and (3) dismissing without prejudice San Miguel's claims against Texas Tech. The remaining Defendants in this action are Defendants McLane, Searcy, Kingston, Keesee, Salinas, and Castro, who answered and entered an appearance in the state court proceeding prior to removal.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: November 25, 2020.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE