IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

SAMUEL SAN MIGUEL,                  §
                                    §
            Plaintiff,              §
                                    §
v.                                  §          No. 5:20-CV-041-BV
                                    §
MARSHA MCLANE, *et al.*,            §
                                    §
            Defendants.             §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pro se Plaintiff Samuel San Miguel filed suit under 42 U.S.C. § 1983, alleging that

Defendants Marsha McLane and Michael Searcy violated his right to adequate medical

care by not paying for recommended dental treatment. Dkt. No. 63; *Miguel v. McLane*,

No. 22-10517, 2024 WL 747232, at *10–13 (5th Cir. Feb. 23, 2024) (per curiam).

Defendants move for summary judgment. Based on the pleadings and summary

judgment evidence, the undersigned magistrate judge recommends that the district judge

**GRANT** summary judgment. Dkt. No. 116.

## 1.   Background

San Miguel is a resident of the Texas Civil Commitment Center (TCCC) for

sexually violent predators (SVPs) in Littlefield, Texas. Dkt. No. 60 at 3.[1]  He originally

filed suit in 2020, alleging in part that Defendants denied him adequate medical care by

---

[1] San Miguel's complaint is verified. Dkt. No. 60 at 23.  The Court therefore considers it competent summary judgment evidence. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (per curiam) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

not replacing a filling on his front tooth and instead requiring him to self-pay despite his indigency. *Id.* at 8–9; *see also* Dkt. No. 1-3 at 7, 19–20; *Miguel*, 2024 WL 747262 at \*12. During the pendency of his case, San Miguel filed a supplemental document in which he said he had seen a dentist and had two molars that also needed fillings. Dkt. No. 51 at 1, 5.[2] Since that time, both molars have been extracted, but the front tooth remains untreated. Dkt. No. 130-1 at 2–4; *see also id.* at 10 (showing that the front tooth was broken but there was no decay).[3]

The Texas Civil Commitment Office (TCCO) contracts with Management and Training Corporation (MTC) "for the operation of the TCCC" and has since May 1, 2019. Dkt. No. 118 at 3.[4] MTC initially subcontracted medical care for TCCC residents to the Texas Tech Health Sciences Center, but since September 1, 2020, MTC has provided medical care. *Id.*

San Miguel alleges that Defendant Marsha McLane is the Executive Director of TCCO and is "legally responsible" for "the overall function, policy, and administration of the TCCC," including ensuring that all residents receive a constitutionally acceptable standard of care. Dkt. No. 60 at 6; *see* Dkt. No. 117 (brief in support of summary judgment stating that McLane is the Executive Director of TCCO). San Miguel alleges that Defendant Michael Searcy is a TCCO Operations Specialist who is "legally responsible for overall policy and administration of the TCCO and TCCC," including the

---

[2] This filing was verified. Dkt. No. 51 at 3.
[3] This filing was verified. Dkt. No. 130-1 at 4.
[4] Defendants did not sequentially paginate their appendix, so page citations refer to the electronic page number in the Court's electronic filing system. *See* N.D. Tex. Loc. Civ. R. 56.6(b).

2

medical care provided to residents. Dkt. No. 60 at 6; *see* Dkt. No. 117 (brief in support of summary judgment stating that Searcy is the Operations Specialist of TCCO).

When San Miguel entered the TCCC in September 2015, his front tooth was already chipped. Dkt. No. 60 at 8. While in the TCCC, he has visited a dentist at least twice. *Id.* According to San Miguel, each time, the dentist recommended filling his front tooth. *Id.* San Miguel alleges that he requested in 2019 that his tooth be filled, but he was denied that care because the contracted provider only covered emergency dental care, and all other dental care was self-pay. *Id.* at 9; *see also* Dkt. No. 1-3 at 64. Texas Tech medical staff told San Miguel that the medical department would only provide extractions, and appointments for repairs and cleanings would need to be scheduled another way and were self-pay. Dkt. No. 1-3 at 67. San Miguel complained directly to Searcy, who "personally" responded, "well, I'll tell you right now that we[']re not gonna [sic] pay to fix it." *Id.*

On June 29, 2020, San Miguel received additional dental care. Dkt. Nos. 51 at 1; 130-1 at 2. This time, the dentist noted cavities in San Miguel's back right molars that required fillings or a root canal. Dkt. No. 130-1 at 2, 9. According to San Miguel, none of the recommended treatment was provided at that time. *Id.* at 2–3. He claims that he was denied the treatment because of the "Defendant's contract," and his cavities "were simply left to decay, get worse, and eventually infected." *Id.* He alleges that his gums became infected, causing him pain, swelling, interrupted sleep, and an impaired ability to eat. *Id.* at 3. He states that "the Defendants (via contract) simply left [him] to suffer." *Id.*

TCCC changed medical providers on September 1, 2020. Dkt. No. 117 at 3. Records show that on May 4, 2021, medical staff treated San Miguel with antibiotics for a gum infection. Dkt. No. 130-1 at 3, 8–11. On October 19, 2021—more than sixteen months after his last dental appointment—San Miguel was transported to the dentist, who pulled one of his molars. *Id.* at 3, 16. The following month, San Miguel was again prescribed antibiotics for an infection around his teeth. *Id.* at 3, 13–16.

For a week in April 2024, a mobile dental truck treated patients at TCCC. *Id.* at 3. Notes from that visit describe another of San Miguel's molars as "non-salvageable[,]" so that tooth was pulled. *Id.* at 21. At this visit, San Miguel did not mention pain related to his front tooth, although the dentist found that "moderate decay" had developed on that tooth, and San Miguel experienced pain during the exam. *Id.* at 17. The dentist recommended that San Miguel's front tooth be filled to "restore" the tooth and "prevent further growth of decay," but the dentist could not perform the procedure that day and said he would return. *Id.* at 4, 21. San Miguel alleges that, as of November 14, 2024, "this filling has still not been provided, and [his] front tooth is getting worse." *Id.*

### Procedural Background

San Miguel initially filed this action in the 154th Judicial District Court of Lamb County, Texas, asserting claims against multiple defendants. Dkt. Nos. 1 at 2; 1-3 at 1–2. The case was removed to this Court on February 21, 2020. Dkt. No. 1 at 1–6. The defendants moved for dismissal under Rule 12(b)(6), and this Court dismissed all claims based on the statute of limitations. Dkt. Nos. 29–31, 35–37, 42–43, 46–47, 83, 85–86. On appeal, the Fifth Circuit determined that it was unclear from the pleadings that the

4

claim against Defendants McLane and Searcy related to the alleged denial of adequate dental care was barred by the statute of limitations and reversed the dismissal of that claim. *Miguel*, 2024 WL 747232, at \*11–13.

Thus, San Miguel's sole surviving claim is that Defendants McLane and Searcy denied him adequate dental care. Dkt. No. 60 at 6–9.[5] He sues Defendants for damages in their individual capacities and for injunctive relief in their official capacities. Dkt. Nos. 60 at 3–4; 130 at 4. Defendants move for summary judgment. Dkt. No. 117.

### Defendants' Arguments and Evidence

Defendants assert immunity under the Eleventh Amendment on official-capacity claims seeking monetary damages and equitable relief. Dkt. No. 117 at 11–18. They argue that because they contracted with MTC to provide medical care, they are not the proper defendants because they are insufficiently connected to the enforcement of the alleged constitutional violation. *Id.* at 12–13. They further argue that even if they were proper defendants, they are immune because San Miguel has not shown an ongoing constitutional violation. *Id.* at 13–16.

Defendants further argue that San Miguel lacks Article III standing to name them as defendants. *Id.* at 18–19. They contend that they cannot redress San Miguel's injuries because they are not responsible for MTC's medical decisions. *Id.*

They assert that San Miguel fails to show that they are personally responsible for the alleged lack of adequate medical care and cannot demonstrate supervisory liability

---

[5] Page citations to San Miguel's Response in Opposition to Defendants' Motion for Summary Judgment refers to the electronic page number assigned by the Court's electronic filing system.

based on implementation of an unconstitutional policy because MTC has provided for

"fillings, extractions, alveoloplasty, wisdom tooth removal, periodontal maintenance, and

more." Dkt. Nos. 117 at 18; 118 at 6–9. They also assert that San Miguel is unable to

provide evidence of Searcy "personally denying" care because MTC, not TCCO, makes

decisions regarding offsite dental care and pays for that care. Dkt. No. 117 at 18.

Finally, Defendants assert qualified immunity. *Id.* at 19–20. In support, they

argue that San Miguel cannot provide evidence that Defendants violated his

constitutional rights by implementing a policy providing for inadequate medical care nor

that Searcy "personally" denied payment for his dental procedure. *Id.* In support of their

arguments, Defendants provide an affidavit by Jessica Marsh, the Deputy Director of

TCCO, explaining the relationship between TCCO and MTC and the duties and

responsibilities assigned to MTC under the contract between the two entities. Dkt. No.

118 at 2–4. Defendants also provide a history of dental services provided to TCCO

clients since 2016. *Id.* at 5–9.

### San Miguel's Response and Evidence

San Miguel clarifies that he does not seek monetary damages against Defendants

in their official capacities. Dkt. No. 130 at 4. He counters Defendants' claims of

immunity by arguing that the nature of their positions—including McLane as the

signatory of the contract between TCCO and MTC that provides for emergency-only

dental care and Searcy as contract compliance manager—imposes a duty to enforce or

implement the challenged policy. *Id.* San Miguel states, "Defendants are directly

connected to [San Miguel's] injuries and are []the only ones who can[] redress his

6

injuries by contracting for the appropriate care[.]" *Id.* at 7. San Miguel further argues

that the constitutional violation is ongoing because he "still needs teeth fillings." *Id.* at 6.

San Miguel argues that "Defendants are liable in their supervisory capacities" because

"they were personally involved [in] the constitutional deprivation, *via contract*[.]" *Id.* at

7 (emphasis in original).

San Miguel contends that Defendants are not entitled to qualified immunity

because they deviated from the professional judgment standard and violated his

constitutional rights by contracting for emergency-only dental care. *Id.* at 8–10. He

claims that Defendants do not provide the variety of services they claim, and he alleges

that they contracted to provide extractions only. *Id.* at 10.

In support of his contentions, San Miguel submits as evidence (1) three pages of

the contract between TCCO and MTC, showing that MTC is to provide dental care in

"emergent situations"; (2) sick call requests stating that his tooth hurt; (3) medical

records from dentists recommending fillings; and (4) declarations from three TCCC

residents stating that during their time at TCCC, they experienced delays in care and

received extractions only, except for one individual who also received a filling. Dkt. No.

130-1.

## 2.    Summary Judgment Standard

If the pleadings and evidence show that no genuine issue of material fact exists,

the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P.

56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion" and for identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (explaining that the movant "bears the burden of demonstrating that there is no genuine dispute of material fact"). When the nonmovant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record[.]" *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *accord Owens*, 33 F.4th at 824. If the movant meets that burden, the nonmovant must then "point to 'specific facts showing that there is a genuine [dispute] for trial.'" *Owens*, 33 F.4th at 824 (quoting *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019)).

In considering a summary judgment motion, courts must view all facts and inferences in the light most favorable to the plaintiff and resolve any disputed material facts in his favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Still, "a [plaintiff] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A plaintiff "must allege facts

specifically focusing on the conduct of [the defendant] which caused his injury." *Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 995 (5th Cir. 1995), *overruled on other grounds by Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022).

### 3.    Analysis

#### A.    San Miguel does not seek monetary damages from Defendants in their official capacities. Even if he had, San Miguel abandoned such claims.

Defendants assert immunity on claims for money damages against them in their official capacities. Dkt. No. 117 at 11. San Miguel specified that he does not seek such. Dkt. No. 60 at 3–4; *see also* Dkt. Nos. Dkt. No. 71 at 5; 130 at 4. Further, the Fifth Circuit held that San Miguel abandoned any claim seeking monetary damages against Defendants in their official capacities. *Miguel*, 2024 WL 747232, at *3. Accordingly, there are no such claims at issue here.

#### B.    Defendants are entitled to immunity on claims for equitable relief.

San Miguel seeks an injunction ordering Defendants "to provide custodial care . . . beyond what would be provided in the penitentiary." Dkt. No. 60 at 21–22. Defendants assert sovereign immunity.

"Under the Eleventh Amendment, 'federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.'" *Healthy Vision Ass'n v. Abbott*, 138 F.4th 385, 396 (5th Cir. 2025) (brackets omitted) (quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014)). "But under the rule of *Ex parte Young*, 209 U.S. 123 (1908), 'a federal court may enjoin a

state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution.'" *Id.* (quoting same). "[I]nquiry into whether a suit is subject to the *Young* exception does not require an analysis of the merits of the claim." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002)). In conducting an *Ex parte Young* analysis, the court considers (1) "whether the plaintiff has named the proper defendant or defendants"; (2) "whether the complaint alleges an ongoing violation of federal law"; and (3) whether plaintiff "seeks relief properly characterized as prospective." *Id.*

Defendants do not challenge whether San Miguel seeks prospective relief. Dkt. No. 117 at 12. They do challenge, however, whether he has named the proper defendants and whether he has alleged an ongoing violation of federal law.

### i. McLane and Searcy are not proper defendants.

Under *Ex parte Young*, the Court must first analyze whether San Miguel has named the proper defendants. *City of Austin*, 943 F.3d at 998. "[T]he proper defendant has a 'particular duty to enforce the law in question and a demonstrated willingness to exercise that duty.'" *Washington v. McLane*, No. 23-50235, 2025 WL 400030, at *2 (5th Cir. Feb. 5, 2025) (per curiam) (brackets omitted) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). "The state official must have a duty beyond the general duty to see that the laws of the state are implemented. Rather, the official must have the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Id.* (internal quotation marks, brackets, and citation omitted).

10

"Plaintiffs need only show a scintilla of enforcement by the relevant state official." *Id.* (internal quotation marks and citation omitted). "Direct enforcement is not required." *Id.* (alterations and citation omitted).

San Miguel alleges that Defendants have a "particular duty" to enforce his constitutional right to adequate medical care. But Defendants argue that San Miguel "sued the wrong defendants for this claim." Dkt. No. 117 at 12. They argue that they lack "any input or authority over the medical decisions that . . . MTC make[s] on San Miguel's behalf" because the TCCO simply reimburses MTC for medical bills upon request. *Id.* at 12–13. In support, Defendants provide an affidavit from TCCO Deputy Director Jessica Marsh, who states that "TCCO contracts with [MTC] for the operation of the TCCC." Dkt. No. 118 at 3. The contract "requires MTC to provide access to offsite healthcare." *Id.* "MTC pays for offsite dental care . . . for pain and infection control" but "does not pay for . . . for cosmetic procedures such as a routine cleaning" unrelated to pain or infection control. *Id.* Marsh makes no representations regarding the scope of McLane or Searcy's duties, including whether either one is responsible for ensuring that TCCC residents have access to medical care or for enforcing the contract between TCCO and MTC. *Id.*

San Miguel's pleadings allege that McLane is the Executive Director of the TCCO and that she signed a contract specifying that all medical care, including emergency dental care, would be provided by MTC. *See* Dkt. No. 130-1 at 6–8. The three pages of the contract between TCCO and MTC that San Miguel submits with his brief show that McLane has the "authorit[y] to administer activities under this Contract on behalf of

11

[TCCO]." Those pages do not specify that she has authority to make or override medical decisions, such as whether a particular course of dental treatment will be approved or funded. *Id.*; *see* Dkt. No. 118 at 4 ("TCCO does not determine whether the client's dental needs are emergent issues" and "such determinations are made by the onsite medical providers."). Beyond the contract, San Miguel cites no evidence addressing McLane's involvement in the decisions regarding his care.

Based on this evidence, McLane appears to be an improper defendant. Although she is a state official with the authority to contract for the provision of healthcare for committed SVPs, there is no evidence that, having contractually delegated such authority to MTC, she retained the ability to override medical decisions made by MTC, much less that she ever exercised such authority. This lack of enforcement authority is critical to the analysis. *See Air Evac EMS, Inc. v. Texas*, 851 F.3d 507, 518-19 (5th Cir. 2017) (explaining that, in two suits alleging violations of a state statute, the defendants named "provided the determinative distinction" on whether the *Young* exception applied when one set of plaintiffs sued defendants "who had specific means through which" to apply the statute). *Young* requires a "straightforward inquiry." *Id.* at 519.

The situation presented here is dissimilar to the situation in *Washington*, where the Fifth Circuit reviewed McLane's status related to a no-marriage policy impacting an SVP. 2025 WL 400030, at *1. There, the court determined that McLane was the "leader of TCCO with 'direct governing authority' [and] final say" who "possessed the requisite enforcement authority" related to the marriage policy. *Id.* at *2. But here, although McLane possessed the authority to contract for the provision of medical care, San Miguel

12

has cited no evidence showing that McLane has authority to determine whether San Miguel's front tooth will be filled. Although the Fifth Circuit cautions courts not take "an unduly narrow view" on a person's role in enforcing a policy, San Miguel offers nothing to controvert the summary judgment evidence showing that "it is the responsibility of MTC to provide the [needed] care or provide access to care" and "if above [a] $25,000 threshold, submit those expenses and proof of payment to TCCO for reimbursement." Dkt. No. 118 at 4. Because McLane appears to have no say-so in what care is ultimately provided, she is an improper defendant.

Searcy is likewise an improper defendant. San Miguel states that Searcy serves as an operations specialist for TCCC and is responsible for "ensuring that [San Miguel] received the medical/psychiatric/dental care" he needs. Dkt. No. 60 at 6; *see also* Dkt. No. 117 at 7. San Miguel further alleges—with conclusory statements and no supporting evidence—that Searcy serves as the contract compliance manager and thus has a particular duty to enforce the contract between TCCO and MTC. Dkt. No. 130 at 4. Finally, San Miguel alleges that Searcy told him that "were" [sic] not going to pay to "fix" his tooth. Dkt. No. 60 at 8.

Relevant here, a person's title or authority does not establish evidence that the person has "some scintilla of enforcement" authority. *See City of Austin*, 942 F.3d at 1001–02. And Searcy's alleged statement—which is unclear at best—does not show that he decided or had control over what dental care MTC would provide or pay for; it merely demonstrates that Searcy informed San Miguel of the decision. As with McLane, there is no evidence that TCCC retained authority to oversee or make decisions about what care

MTC or its contractors provide. Therefore, the undersigned determines that San Miguel

has failed to establish that Searcy is a state official with a specific duty to enforce a state

law or policy and thus is not a proper defendant. *See Washington*, 2025 WL 400030, at

\*3 (dismissing claim against a defendant where the plaintiff failed to establish

jurisdiction over those claims). Accordingly, the undersigned recommends that the

district judge find that McLane and Searcy are entitled to Eleventh Amendment

immunity.

### ii.    There is adequate evidence that San Miguel alleges an ongoing constitutional violation.

If the district judge disagrees and determines that McLane or Searcy was a proper

defendant, the next step of the analysis requires the court to conduct a "straightforward

inquiry into whether the complaint alleges an ongoing violation of federal law and seeks

relief properly characterized as prospective." *City of Austin*, 943 F.3d at 999 (brackets

omitted) (quoting *Verizon Md. Inc.*, 525 U.S. at 645). This straightforward inquiry "does

not require an analysis of the merits of the claim." *Id.*

Here, San Miguel alleges that Defendants violated his right to adequate medical

care by not paying for recommended dental treatment, and in effect, totally denied him

such treatment.[6] *Miguel*, 2024 WL 747232, at \*10. He seeks relief in the form of

---

[6] Subsequent briefing calls into question whether MTC continues to deny care at this point. According to San Miguel, his molars have been extracted, and at his most recent dental visit, he was informed that the dentist would be back to fill the front tooth. Dkt. No. 130-1 at 4 ("[The dentist] stated that they will be back to fill it" and "we will be back to fix the front tooth."). At the time of San Miguel's sworn statement, dated November 14, 2024, that had not yet happened. *Id.* Given that he has been trying to get his tooth filled since 2019, the seven-month lapse suggests that MTC may not have approved the care, but nothing in the filings says so. *See id.* It is plausible that MTC intends to provide the care, and the mobile dentist has not been back to the TCCC yet.

receiving the dental care recommended. The Fifth Circuit explained that "while the TCCC may have offered to pay for a tooth extraction, nothing in San Miguel's complaint or the record suggests that a dentist had recommended tooth extraction." *Id.* at *11. Moreover, "San Miguel alleged that he was 'indigent' and, to no avail, submitted several requests to work so he could afford the treatment." *Id.* at *12. San Miguel alleges that his tooth *still* has not been treated. Dkt. No. 130-1 at 4.

The question, then, is whether these facts are sufficient to adequately allege an ongoing constitutional violation *without consideration of the merits*. According to the Fifth Circuit's comparison of the facts here to the facts in *Carlucci v. Chapa*, the answer is yes. 884 F.3d 534 (5th Cir. 2018). In *Carlucci*, a federal prisoner alleged that a dentist recommended a bridge restoration and repair to his cracked teeth, but the prison did not provide that care. *Id.* at 539. Without considering the merits of the claim, the Fifth Circuit held that the prisoner had raised a plausible Eighth Amendment violation. *Id.* For the same reasons, since San Miguel has alleged that the dentist recommended care that was not provided and is *still being denied*, San Miguel has plausibly alleged an ongoing Fourteenth Amendment violation. *Miguel*, 2024 WL 747232, at *5 (recognizing that an SVP's right to medical care flows from the Fourteenth Amendment).

Thus, if either Defendant was a proper defendant, then *Ex parte Young* would not bar this action as to that Defendant. However, for the reasons below, the undersigned magistrate judge nonetheless recommends dismissal.

15

## C.    San Miguel lacks Article III standing.

Defendants assert that San Miguel lacks standing because he cannot show (1) a connection between Defendants' actions and his injuries, and (2) that his injuries are redressable by Defendants. Dkt. No. 117 at 18.

To have Article III standing, San Miguel "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (citation omitted). "[T]he party invoking federal jurisdiction, bears the burden of establishing its existence." *Id.* (brackets and citation omitted). "Each element of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the same evidentiary requirements of that stage of litigation." *Id.* (citation omitted). "Thus, at summary judgment, [San Miguel] can't rely on 'mere allegations'; [he] 'must set forth by affidavit or other evidence specific facts' supporting standing." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"Even though Article III requires a causal connection between the plaintiff's injury and the defendant's challenged conduct, it doesn't require a showing of proximate cause or that 'the defendant's actions are the very last step in the chain of causation.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). "Causation . . . isn't precluded where the defendant's actions produce a determinative or coercive effect upon the action of someone else, resulting in injury." *Id.* (quoting same) (internal quotation marks omitted).

"To satisfy redressability, a plaintiff must show that 'it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). "[R]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Id.* (citation omitted).

San Miguel has not shown that his injury—the failure to repair his front tooth—is "traceable" to McLane or Searcy. Regarding McLane, although San Miguel has shown that she contracted on behalf of TCCO for the provision of emergency dental care, San Miguel has not shown that she had any involvement in the decisions regarding his care, including promulgation of policies regarding what dental care is considered "emergent" or specific responsibility for things such as when San Miguel would see a dentist and what care would be provided. *See generally* Dkt. Nos. 60 at 8–9, 19–20; 130 at 7 (generally averring that McLane denied him care "via contract," but identifying no facts to support that she has responsibility for making dental policies under the contract or for overseeing what dental care is approved or denied). Regarding Searcy, San Miguel provides evidence in the form of his sworn statement that Searcy communicated that the repair would not be paid for, but San Miguel has presented no evidence that Searcy was involved in making that decision, and the sworn affidavit of TCCO Deputy Director Jessica Marsh indicates he was not since those decisions are made by MTC. *See* Dkt. No. 118 at 3–4.

Furthermore, San Miguel has not provided evidence demonstrating that a favorable decision against Defendants would remedy the alleged constitutional violation.

*See* Dkt. No. 130-1 at 3 ("I honestly was hoping that the court would order Defendants to provide me the recommended dental care so I wouldn't lose my tooth." (cleaned up)). San Miguel provided pages of a contract showing that TCCO already makes provision for emergency dental care, which includes care for pain and infection control. Dkt. No. 118 at 2–4. According to the evidence, this care includes providing fillings when MTC determines that is appropriate. *See id.* at 6–9 (showing various services performed by MTC's outside dental provider). Thus, even if the Court were to determine that San Miguel should receive the equitable relief he seeks, Defendants do not appear to be the decision-makers responsible for the alleged denial of care for San Miguel's tooth. That is, even if the Court were to rule in San Miguel's favor, TCCO's contract with MTC would still be in place, and nothing under the contract suggests that McLane or Searcy have the authority to direct override MTC's coverage decisions.

Accordingly, the undersigned magistrate judge recommends that the district judge determine that San Miguel has failed to show that his injury is traceable to or redressable by Defendants.

### D.     Defendants are not directly liable under § 1983 for the denial of dental care.

San Miguel alleges that McLane and Searcy are responsible for denying him dental care in contravention of his constitutional rights. Dkt. No. 60 at 8–9. But he alleges no facts showing that either one was "personally involved" in the alleged deprivation.

The Constitution requires institutional officials to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). The Fifth Circuit has not declared whether a professional judgment or deliberate indifference standard applies to claims of inadequate medical care raised by civilly committed individuals. *Perniciaro v. Lea*, 901 F.3d 241, 255–56 (5th Cir. 2018); *see also Miguel*, 2024 WL 747232, at *5–6 (citing cases showing a federal circuit split on the standard and evaluating for deliberate indifference). Because the Fifth Circuit has applied the deliberate indifference standard, the undersigned magistrate judge does likewise. *See Rogers v. Caswell*, 823 F. App'x 263, 264–65 (5th Cir. 2020) (per curiam) (determining whether civilly committed plaintiff pleaded adequate facts to support claim for deliberate indifference to his serious medical needs); *see also Bohannan v. Doe*, 527 F. App'x 283, 292 (5th Cir. 2013) (evaluating SVP's claim for denial of adequate medical for deliberate indifference).

A plaintiff seeking to establish a constitutional violation regarding medical care must allege facts showing that officials were deliberately indifferent to his serious medical needs. *Morris*, 739 F.3d at 747. "Deliberate indifference is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764 770 (5th Cir. 2009) (per curiam) (internal quotation marks omitted). This standard requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference where he (1) knows the plaintiff faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at

19

346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that a prison official is not liable for the denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not[,] is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770; *see Lawson v. Dall. Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and the inmate must show that the prison official was actually aware of the risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. While disagreement about the recommended medical treatment is generally insufficient to show deliberate indifference, denial of recommended treatment is often sufficient to show deliberate indifference. *Carlucci*, 884 F.3d at 538. A delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, to state a viable claim for deliberate indifference to serious medical needs, an inmate must demonstrate that

20

prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

San Miguel has not alleged any facts demonstrating that McLane was actually aware that a dentist had recommended filling the front tooth, much less that she was aware of any substantial risk of harm related to any failure to follow that recommendation. *See* Dkt. No. 60 at 8; *see also* Dkt. No. 130–1 at 10, 21. Similarly, San Miguel alleges that Searcy told San Miguel that his front-tooth repair would not be covered, but San Miguel alleges no facts showing that Searcy was actually informed of the dentist's recommendation or that he was aware of any substantial risk of harm to San Miguel related to the purported lack of care. This is particularly relevant since, at least in the initial phases of San Miguel's dental care, his front tooth exhibited no disease. Dkt. No. 130–1 at 10. Moreover, none of San Miguel's allegations or supporting evidence shows that either McLane or Searcy was directly involved in his dental care. While the undersigned magistrate judge accepts as true at this juncture that San Miguel did not receive the treatment his dentist purportedly recommended, he has not shown that either Defendant was responsible for that failure.[7] *See* Dkt. No. 60 at 8–9.

---

[7] It is not clear whether the dentist recommended a filling because San Miguel communicated a preference for a treatment that preserved his tooth or whether another treatment option was available. *See* Dkt. No. 130–1 at 10 (noting that patient "want[s] options to fix teeth").

21

**E.    Defendants do not have supervisory liability under § 1983 for the denial of dental care.**

Possibly recognizing that Defendants are not directly responsible for the alleged failure to follow the dentist's recommendation, San Miguel's response to the motion for summary judgment stresses their supervisory roles, alleging that they denied him care "via contract." Dkt. No. 130 at 5. But San Miguel fails to show that Defendants are liable in their supervisory capacities.

A claim under 42 U.S.C. § 1983 must not be "based on the conduct of subordinates" because "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Monell v. N.Y. Dep't of Soc. Servs.*, 432 U.S. 658, 693 (1978). However, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169–70 (5th Cir. 1985)).

As San Miguel's case has lingered in the courts, his allegations have shifted slightly, and he now claims that Defendants denied him care "via contract" because it is "their policy, practice, and custom" at TCCC to provide only emergency extractions, Dkt. No. 70 at 1, and that Defendants are liable under § 1983 for implementing an unconstitutional policy that results in a constitutional injury, Dkt. No. 130 at 5. To the extent this argument is adequately pled, it fails on San Miguel's own evidence.

San Miguel provides three pages of a contract between TCCO and MTC that show MTC is required to provide dental care in emergent situations. Dkt. No. 130-1 at 6–8. Those pages say nothing about dental care being limited to "extractions only." *Id.* While what constitutes an "emergent situation" is not defined in the pages provided, San Miguel's evidence includes a statement from another TCCC resident confirming that he received a filling. *Id.* at 27. That comports with Defendants' proffered evidence showing that MTC has provided "fillings, extractions, alveoloplasty, wisdom tooth removal, periodontal maintenance, and more" in emergency situations. Dkt. No. 118 at 6–9. In any case, "the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act." *Thompkins*, 828 F.2d at 305. Thus, even if San Miguel has been denied a filling because he cannot afford to obtain that care at his own expense or because it is not considered emergency care, the Court cannot infer that a policy providing only for emergency dental care is unconstitutional. This is not to suggest that the undersigned magistrate judge is unconcerned that San Miguel has waited many months for his front tooth to be filled as recommended based on the presence of tooth decay; this is simply to say that San Miguel has not shown that Defendants created an unconstitutional policy.[8]

### F.   Defendants are entitled to qualified immunity.

Defendants assert qualified immunity, arguing that San Miguel fails to allege an Eighth Amendment violation attributable to Defendants. Dkt. No. 117 at 19–20. In

---

[8] Although San Miguel requested a filling for his front tooth sooner, the evidence suggests he had no decay in that tooth until sometime later.

response, San Miguel maintains that he has indeed stated a violation of his right to adequate medical care because he has stated a claim under the established standards— deliberate indifference and professional judgment—for determining the denial of medical care. Dkt. No. 130 at 8–12.

San Miguel's constitutional right to adequate medical care flows from the Fourteenth Amendment, not the Eighth Amendment. *Miguel*, 2024 WL 747232, at *5. While the Fifth Circuit determined that it was not apparent from the face of San Miguel's complaint that the action was barred by the statute of limitations and that he had sufficiently alleged a claim, the court specifically declined to consider whether Defendants were entitled to qualified immunity. *Id.* at *12.

"When a public official makes 'a good-faith assertion of qualified immunity,' that alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020). Instead of the public official showing "an absence of genuine disputes of material fact and entitlement to judgment as a matter of law," "[t]he plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330. "[A] plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "This requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution." *Id.* at 330 (internal quotation marks and

brackets omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018).

"While there need not be a case directly on point, the unlawfulness of the challenged

conduct must be beyond debate." *Id.* (internal quotation marks omitted) (quoting same).

"This leaves the rare possibility that, in an obvious case, analogous case law is not

needed because the unlawfulness of the challenged conduct is sufficiently clear even

though existing precedent does not address similar circumstances." *Id.* (internal

quotation marks and brackets omitted) (quoting same).

Regarding McLane, San Miguel has alleged no material facts of genuine dispute

on which a jury could rule in his favor. First, as previously discussed, there is no

evidence that McLane violated San Miguel's constitutional right to adequate medical

care. There appears to be no dispute that McLane lacks personal involvement in San

Miguel's dental treatment, and San Miguel's allegation that the violation occurred "by

contract" in unavailing. San Miguel's own evidence, along with Defendants' evidence,

shows that SVPs receive more than "extractions only" as San Miguel claims. And, more

importantly, San Miguel fails to show that it is "beyond debate" that civilly committed

individuals are constitutionally entitled to more than emergency dental care at taxpayer

expense. Indeed, he has presented no case or body of cases clearly establishing that

premise, *see* Dkt. No. 130 at 11–12, making it impossible for him to demonstrate that

McLane violated a known constitutional duty to provide such care to the SVPs in the

program she oversees. *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) ("A plaintiff

must identify a case . . . in which an officer acting under similar circumstances was held

to have violated the Constitution. While a plaintiff need not find a case directly on point,

. . . existing precedent must have placed the . . . constitutional question beyond debate."
(internal quotation marks and citations omitted)); *Stapleton v. Lozano*, 125 F.4th 743, 753
(5th Cir. 2025) (explaining that because "[b]road propositions" cannot show a clearly
established right, plaintiffs' failure "to identify a case in which an officer who did not
obtain medical treatment for a detainee exhibiting symptoms consistent with significant
intoxication was held to have violated the Constitution" entitled officers to qualified
immunity). Accordingly, McLane is entitled to qualified immunity on these claims.

Likewise, as previously discussed, San Miguel has failed to adequately allege that
Searcy violated San Miguel's constitutional right to adequate care. While there appears
to be some dispute as to whether Searcy communicated to San Miguel that his tooth
repair would not be covered, even if that fact were resolved by a jury in San Miguel's
favor, he fails to show that Searcy violated an established constitutional duty in so
communicating. By San Miguel's own evidence, Searcy was not directly involved in any
decision-making regarding what care San Miguel received, and his claim that Searcy was
responsible "by contract" fails for the same reasons the same claims fail against
McLane.[9]  And even if San Miguel has shown a constitutional violation, his failure to
identify sufficiently analogous cases showing a violation of clearly established law means
Defendants are entitled to qualified immunity. *See Morrow v. Meachum*, 917 F.3d 870,
874–75 (5th Cir. 2019) (emphasizing that courts "must frame the constitutional question

---

[9] Moreover, it is unclear from the pleadings that at the time Searcy made the alleged statement that San Miguel had a medical need for a tooth repair.

with specificity and granularity" and that "clearly established law comes from holdings, not dicta").

In sum, San Miguel has not shown that Defendants are responsible for violating a constitutional right that was clearly established at the time of the alleged deprivation. Defendants are entitled to summary judgment based on qualified immunity as to claims against them in their individual capacities.

### 4.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **GRANT** Defendants' motion for summary judgment.  Dkt. No. 116.

### 5.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 20, 2025.

**AMANDA 'AMY' R. BURCH**
**UNITED STATES MAGISTRATE JUDGE**